**No. 26-2129**

---

# The United States Court of Appeals for the Seventh Circuit

---

VOCES DE LA FRONTERA, INC.,
*Petitioner-Appellee,*

v.

DAVE GERBER, et al.,
*Respondents-Appellants.*

---

Appeal from the United States District Court
for the Western District of Wisconsin
Case No. 25-cv-01070-wmc
Honorable Judge William M. Conley

---

## JOINT BRIEF AND APPENDIX OF RESPONDENTS-APPELLANTS

---

SAMUEL C. HALL, JR.
MOLLY K. WOODFORD
CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Respondents-Appellants Dave Gerber, Todd Delain, Chad Billeb, and David Zoerner
710 N. Plankinton Avenue, Suite 500
Milwaukee, Wisconsin 53203
Phone: 414-271-7722
Email:shall@crivellolaw.com
mwoodford@crivellolaw.com

ANDREW T. PHILLIPS
MATTHEW J. THOME
ATTOLLES LAW, S.C.
Counsel for Respondent-Appellant, Sheriff Chip Meister
222 E. Erie St. Ste. 210
Milwaukee, WI 53202
Phone: 414-285-0825
Email: aphillips@attolles.com
mthome@attolles.com

**Save As**      **Clear Form**

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-2129

Short Caption: Voces de la Frontera, Inc. v. Gerber, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Dave Gerber, Sheriff of Walworth County, Todd Delain, Sheriff of Brown County, Chad Billeb, Sheriff of Marathon

 County and David Zoerner, Sheriff of Kenosha County

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Crivello, Nichols & Hall, S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

       N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: s/ Samuel C. Hall, Jr.    Date: June 3, 2026

Attorney's Printed Name:  Samuel C. Hall, Jr.

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑  **No** ☐

Address:  710 N. Plankinton Avenue, Suite 500

 Milwaukee, WI  53203

Phone Number: 414-271-7722    Fax Number:  414-271-4438

E-Mail Address: shall@crivellolaw.com

rev. 12/19 AK

**Save As**    **Clear Form**

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-2129

Short Caption: Voces de la Frontera, Inc. v. Gerber, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
   Dave Gerber, Sheriff of Walworth County, Todd Delain, Sheriff of Brown County, Chad Billeb, Sheriff of Marathon

   County and David Zoerner, Sheriff of Kenosha County

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
   Crivello, Nichols & Hall, S.C.

   _____

(3)    If the party, amicus or intervenor is a corporation:

   i)        Identify all its parent corporations, if any; and

            N/A

   ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

            N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: s/ Molly K. Woodford          Date: June 3, 2026

Attorney's Printed Name:  Molly K. Woodford

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [ ]    **No** [✓]

Address:  710 N. Plankinton Avenue, Suite 500

   Milwaukee, WI  53203

Phone Number: 414-271-7722          Fax Number:  414-271-4438

E-Mail Address: mwoodford@crivellolaw.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>26-2129</u>

Short Caption: <u>Voces de la Frontera, Inc. v. Gerber, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Chip Meister, Sheriff of Sauk County</u>

 

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Attolles Law, S.C.</u>

 

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

Attorney's Signature: <u>/s/ Andrew T. Phillips</u>    Date: <u>June 3, 2026</u>

Attorney's Printed Name: <u>Andrew T. Phillips</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: <u>Attolles Law, s.c., 222 E. Erie St., Ste 210, Milwaukee, WI 53202</u>

Phone Number: <u>414-279-0962</u>    Fax Number: <u>414-455-0758</u>

E-Mail Address: <u>aphillips@attolles.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-2129

Short Caption: Voces de la Frontera, Inc. v. Gerber, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Chip Meister, Sheriff of Sauk County

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Attolles Law, S.C.

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

    N/A

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Matthew J. Thome      Date: June 3, 2026

Attorney's Printed Name: Matthew J. Thome

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑ **No** ☐

Address: Attolles Law, s.c., 222 E. Erie St., Ste 210, Milwaukee, WI 53202

Phone Number: 414-285-0825      Fax Number: 414-555-0758

E-Mail Address: mthome@attolles.com

rev. 12/19 AK

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... VII

JURISDICTIONAL STATEMENT ........................................................................ 1

   I.　JURISDICTION OF THE DISTRICT COURT ................................... 1

   II.　JURISDICTION OF THE COURT OF APPEALS .......................... 3

STATEMENT OF THE ISSUES .......................................................................... 4

STATEMENT OF THE CASE ............................................................................. 5

   I.　FACTUAL BACKGROUND ................................................................ 5

   II.　PROCEDURAL BACKGROUND ..................................................... 6

SUMMARY OF ARGUMENT ............................................................................. 7

ARGUMENT ........................................................................................................ 8

   I.　STANDARD OF REVIEW ................................................................. 8

   II.　THE DISTRICT COURT ERRED IN FINDING THE NOTICE OF REMOVAL WAS UNTIMELY ............................................................ 9

     a.　The Petition for an Original Action Could Not Have Been Filed in Federal Court ............................................................................................. 10

     b.　The Sheriffs Did Not Waive Their Right of Removal ................ 14

   III.　REMOVAL IS PROPER UNDER 28 U.S.C. § 1441. ..................... 22

   IV.　*PENNHURST* DOES NOT STRIP THIS COURT OF AUTHORITY TO ENTERTAIN THIS CASE. ................................................................ 31

   V.　REMOVAL IS PROPER UNDER 28 U.S.C. § 1442 ...................... 34

     a.　The Sheriffs were "Acting Under" Federal Officers ................. 35

     b.　The Claims are "For or Relating to" Acts Under Color of Federal Office .... 40

     c.　The Sheriffs have a Colorable Federal Defense .......................... 41

CERTIFICATE OF COMPLIANCE ................................................................ 50

CIRCUIT RULE 30(D) STATEMENT ............................................................ 51

CERTIFICATE OF SERVICE ......................................................................... 52

APPENDIX ........................................................................................................ 53

## TABLE OF AUTHORITIES

**Cases**

*Abraham v. Piechowski*, 13 F. Supp. 2d 870 (E.D. Wis. 1998)................................. 31

*Amancio v. DePerry*, 654 F. Supp. 3d 145 (D. Conn. 2023)........................... 37, 40, 41

*Andruss v. Divine Savior Healthcare Inc.*, 2022 WI 27, 401 Wis. 2d 368, 973 N.W.2d 435. ............................................................................................................... 16

*Application of Sherper's Inc.*, 253 Wis. 224, 33 N.W.2d 178 (1948)......................... 17

*Arizona v. United States*, 567 U.S. 387 (2012)...................................................... 26, 27

*Baker v. Atlantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020)............................. 35, 40

*Barker v. Boettcher*, 171 F.4th 985 (7th Cir. 2026)................................................ 3, 22

*Betzner v. Boeing Co.*, 910 F.3d 1010 (7th Cir. 2018)................................................. 8

*BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230 (2021). ...................... 8

*Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082 (N.D. Ill. 2015)................................... 35

*California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272 (1987).................... 45, 46

*Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340 (5th Cir. 2024). .............. 41

*Castillo v. Snyders*, 497 F.Supp.3d 299 (N.D. Ill. 2020).................................... passim

*Castrejon v. Jerome Cty.*, No. 1:20-vc-00462 (D. Idaho, July 21, 2022). ..................... 6

*Clarke v. Wisconsin Elections Commission*, 2023 WI 70, 409 Wis. 2d 372, 995 N.W.2d 779.......................................................................................................... 13

*DeBruin v. St. Patrick Congregation*, 2012 WI 94, 343 Wis. 2d 83, 816 N.W.2d 878. ......................................................................................................................... 16

*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006).......................... 22

*Flores v. City of Baldwin Park*, No. CV 14-9290-MWF (C.D. Cal. Feb. 23, 2015).... 27, 28

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). 22, 33

*Gunn v. Minton*, 568 U.S. 251 (2013)................................................................... 22, 33

*Hawkins v. Wisconsin Elections Comm'n*, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877. ................................................................................................................. 13, 17

*Hines v. Davidowitz*, 312 U.S. 52 (1941)................................................................. 45

*Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435 (2019)................................... 9, 10

*In re Exercise of Original Jurisdiction of Supreme Court*, 201 Wis. 123, 229 N.W. 643 (1930).......................................................................................................... 18

*In re Peters*, 34 A.D.3d 29, 821 N.Y.S.2d 61 (1st Dep't 2006). ................................. 13

*Isaacson v. Dow Chem. Co.*, 517 F.3d 129 (2d Cir. 2008).................................... 40, 41

vii

*Jensen v. Wisconsin Elections Board*, 2002 WI 13, 249 Wis.2d 706, 639 N.W.2d 537. ..................................................................................................................... 21

*Keller v. City of Fremont*, 719 F.3d 931 (8th Cir. 2013) ............................................ 27

*Kocken v. Wisconsin Council 40, AFSCME, AFL-CIO*, 2007 WI 72, 732 N.W.2d 828. ..................................................................................................................... 25

*Labor and Farm Party v. Elections Bd., State of Wis.*, 117 Wis. 2d 351, 344 N.W.2d 177 (1984). .......................................................................................................... 18

*Lopez-Lopez c. Cty of Allegan*, 321 F.Supp.3d 794 (W.D. Mich. 2018) ....................... 6

*Lunn v. Commonwealth*, 477 Mass. 517, 78 N.E.3d 1143 (2017). ........................... 27

*Matter of Est. of Medcare HMO*, 998 F.2d 436 (7th Cir. 1993). .............................. 45

*McHenry Cty. v. Kwame Raoul*, 44 F.4th 581 (7th Cir. 2022)........................... 43, 44

*McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781 (1997). ............................................ 39

*Mesa v. California*, 489 U.S. 129 (1989). ................................................................ 41

*Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181 (4th Cir. 2017). .............................................................................................................. 14

*Oshkosh Truck Corp. v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 67 F.R.D. 122 (E.D. Wis. 1975). ........ 13

*Paldrmic v. Altria Corporate Services, Inc.*, 327 F. Supp. 2d 959 (E.D. Wis. 2004).. 42

*Pavalon v. Thomas Holmes Corp.*, 25 Wis. 2d 540, 131 N.W.2d 331 (1964). ........... 19

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984). .......... 4, 8, 31, 32

*People ex rel. Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024). ................................. 8

*Perez v. Campbell*, 402 U.S. 637 (1971). ................................................................ 46

*Petition of Heil*, 230 Wis. 428, 284 N.W. 42 (1939).............................................. 17

*Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012)......................................... passim

*Sandals Resorts Intern'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 925 N.Y.S.2d 407 (1st Dep't 2011). ...................................................................................................... 12

*Snowberry v. Zellmer*, 22 Wis. 2d 356, 126 N.W.2d 26 (1964). ............................. 16

*State ex rel. Gutbrod v. Wolke*, 49 Wis. 2d 736, 183 N.W.2d 161 (1971)................... 19

*State ex rel. Kleczka v. Conta*, 82 Wis. 2d 679, 264 N.W.2d 539 (1978).................... 18

*State ex rel. Ozanne v. Fitzgerald*, 2011 WI 43, 334 Wis. 2d 70, 798 N.W.2d 436. ... 18

*State ex rel. Sonneborn v. Sylvester*, 25 Wis. 2d 177, 130 N.W.2d 569 (1964)........... 18

*Teamsters Local 404 Health Services & Insurance. Plan v. King Pharmaceuticals., Inc.*, 906 F.3d 260 (2d Cir. 2018)................................................................... 11, 13

*Tenorio-Serrano v. Driscoll*, 324 F.Supp.3d 1053 (D. Ariz. 2018)............................. 6

*Trs. of Carpenters' Health & Welfare Tr. Fund of St. Louis v. Darr*, 694 F.3d 803 (7th Cir. 2012)...................................................................................................... 22

*United States v. Di Re*, 332 U.S. 581 (1948). ...................................................... 28

*United States v. Hall*, 543 F.2d 1229 (9th Cir. 1976). .......................................... 29

*United States v. Illinois*, 796 F.Supp.3d 494 (N.D. III. 2025)............................... 43

*United States v. Janik*, 723 F.2d 537 (7th Cir. 1983)........................................... 27

*United States v. Santana-Garcia*, 264 F.3d 1188 (10th Cir. 2001)...................... 27

*United States v. Vasquez–Alvarez*, 176 F.3d 1294 (10th Cir.1999)................. 27, 45

*USA v. State of Illinois, et al*, Seventh Circuit Dkt. No. 25-2904. ........................ 43

*Walker v. Trailer Transit, Inc.*, 727 F.3d 819 (7th Cir. 2013). .................... 9, 11, 20

*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142 (2007). .................... 35, 37

*Willingham v. Morgan*, 395 U.S. 402 (1969). ................................................ 41, 42

*Wis. Prof'l Police Ass'n v. Lightbourn*, 2001 WI 59, 243 Wis. 2d 512, 627 N.W.2d 807. ............................................................................................................... 18

*Wisconsin State AFL-CIO v. Elections Bd.*, 543 F. Supp. 630 (E.D. Wis. 1982). ...... 21

*Wright v. St. Mary's Hosp. of Franciscan Sisters, Racine*, 265 Wis. 502, 61 N.W.2d 900 (1953)............................................................................................... 16

**Statutes**

1 U.S.C. § 1............................................................................................... 35

28 U.S.C. § 1331............................................................................................. 2

28 U.S.C. § 1441.................................................................................... passim

28 U.S.C. § 1442(a)(1). ........................................................................... passim

28 U.S.C. § 1446(b). ................................................................................ passim

28 U.S.C. § 1447(c)...................................................................................... 3, 7

28 U.S.C. § 1447(d). ............................................................................... 3, 8, 22

8 U.S.C. § 1357(g)(1).............................................................................. passim

8 U.S.C. § 1357(g)(10)....................................................................... 2, 25, 39

Cal. Civ. Proc. Code § 501.............................................................................. 43

N.Y. Civ. Rights Law § 23. .............................................................................. 43

S.C. Code Ann. § 15-17-10. ........................................................................... 43

Wis. Stat. § 59.27. .......................................................................................... 25

Wis. Stat. § 59.28. .......................................................................................... 25

Wis. Stat. § 809.70(1)..................................................................................... 17

Wis. Stat. § 809.70(2)..................................................................................... 17

Wis. Stat. § 818.01(1)........................................................................ passim

**Regulations**

8 C.F.R. § 287.7............................................................................... 5

**Constitutional Provisions**

Wis. Const. art. VII, § 3. ................................................................ 17

## JURISDICTIONAL STATEMENT

## I.    JURISDICTION OF THE DISTRICT COURT

Petitioner-Appellee Voces de la Frontera, Inc. ("Voces") filed a petition requesting the Wisconsin Supreme Court take jurisdiction of an original action in the Wisconsin Supreme Court on September 18, 2025 (the "Petition"). (ECF 1-2.) Voces' Petition, presented the issue: "May Wisconsin law enforcement officers deprive a person of liberty after all state law bases for custody have ended, solely on the basis of a federal immigration detainer?" (*Id.*, p. 9.) Voces argued that the Wisconsin Supreme Court should recognize its original-action jurisdiction and grant its petition because the matter addressed a public right, required the Wisconsin Supreme Court to make a "prompt and authoritative determination" on a novel issue, and presented a purely legal question for the Court's review. (*Id.*, p. 10)

The Wisconsin Supreme Court ordered the Respondents-Appellants Sheriffs (collectively, "Sheriffs") to file a response to the Petition, which they did on October 7, 2025. (ECF 1-2, p. 38; ECF 12-3.)

On December 3, 2025, the Wisconsin Supreme Court issued an order granting Voces' petition for leave to commence an original action and assumed jurisdiction over the action. (ECF 1-2, pp. 93-96.) The Wisconsin Supreme Court set briefing deadlines and ordered the parties to include discussion of three issues in their briefs:

> 1. Does WIS. STAT. ch. 818 govern the authority of a sheriff to make a civil arrest only in civil actions pending in Wisconsin courts, or do these provisions additionally circumscribe a sheriff's authority to make a civil arrest pursuant to a federal immigration detainer; and

1

2. What impact, if any, does a sheriff's entry into a formal agreement with the federal government pursuant to 8 U.S.C. § 1357(g)(1)—commonly referred to as a "287(g) agreement"—have on the issue stated in the "Issue Presented" section of the original action petition, paying particular attention to the statutory phrase "consistent with State and local law" in 8 U.S.C. § 1357(g)(1); and

3. What impact, if any, does the fact that a sheriff's department participates in immigration enforcement pursuant to 8 U.S.C. § 1357(g)(10), without a 287(g) agreement, have on the issue stated in the "Issue Presented" section of the original action petition.

(*Id.*, pp. 93-94.)

Within 30 days of the Wisconsin Supreme Court's Order, on December 30, 2025, the Sheriffs removed the original action to the United States District Court for the Western District of Wisconsin. (ECF 1.) As outlined in the Sheriffs' notice of removal, upon the Wisconsin Supreme Court's assumption of jurisdiction, Voces' Petition, as modified by the Wisconsin Supreme Court's Order, became an initial pleading for purposes of 28 U.S.C. § 1446(b); removal of the action was timely because the Notice of Removal was filed within 30 days of service of the Wisconsin Supreme Court's December 3, 2025 Order; removal was proper under 28 U.S.C. § 1441 because the federal court has original jurisdiction, pursuant to 28 U.S.C. § 1331, because the Petition and Order present a federal question; and removal was proper pursuant to federal officer removal under 28 U.S.C. § 1442(a)(1). (*Id.*)

On January 26, 2026, Voces filed a motion to remand and supporting brief, arguing that removal was improper. *See* (ECF 11, 12.) There, Voces argued that the Sheriffs' notice of removal was untimely, the Petition's claim arises only under state law, the federal court lacked authority to tell state officials their obligations under

2

state law, and the Sheriffs are not acting under the federal government and have failed to raise a colorable federal defense. (ECF 12.) The Sheriffs responded, (ECF 13), and Voces replied. (ECF 22.)

On May 15, 2026, the District Court issued an order granting the motion to remand the case under 28 U.S.C. § 1447(c), finding that the Sheriffs' removal was untimely. (ECF 23.)

## II.   JURISDICTION OF THE COURT OF APPEALS

This appeal is taken from the Order, (ECF 23), entered on May 15, 2026, by the United States District Court for the Western District of Wisconsin, the Honorable William M. Conley presiding, in Case No. 25-cv-1070-wmc. The district court did not set out judgment in a separate document and the parties did not request the district court to set out the judgment in a separate document. The decision and order is nevertheless an appealable order because it demonstrates the district court had reached a final decision as to all claims in the litigation.

Specific authority for this Court's appellate jurisdiction is provided in 28 U.S.C. § 1447(d), which expressly provides that "an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." One of the grounds on which this case was removed was federal officer removal under 28 U.S.C. § 1442(a)(1), so this Court has jurisdiction to hear this appeal. *See Barker v. Boettcher*, 171 F.4th 985, 989-90 (7th Cir. 2026). This appeal seeks review of the District Court's May 15, 2026 remand order.

3

In its Order, the District Court recognized that there is no case law addressing whether a petition to a state supreme court seeking its exercise of original jurisdiction qualifies as an "initial pleading" for purposes of § 1446(b)(1). (ECF 23, p. 3.) However, the District Court found Voces' arguments more persuasive, likening their petition to a complaint in a traditional civil lawsuit, despite the Sheriffs' arguments that the petition only became an initial pleading for purposes of § 1446(b)(1) after the Wisconsin Supreme Court agreed to exercise jurisdiction over the original action, particularly considering that the Wisconsin Supreme Court identified additional issues for review beyond the Petition filed by Voces. *See, generally* (ECF 23.)

Therefore, on appeal, the Sheriffs seek review and reversal of the District Court's remand order, which was based on a finding that removal was untimely.

The Notice of Appeal was filed with the District Court on May 26, 2026.

## STATEMENT OF THE ISSUES

1.      Whether the Sheriffs' removal of this action was timely?

2.      Whether Voces' Petition for Leave to Commence an Original Action and the Wisconsin Supreme Court's December 3, 2025 Order present federal questions?

3.      Whether the Supreme Court's decision in *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) strips this Court of authority to entertain this case?

4.      Whether removal is proper under 28 U.S.C. § 1442(a)(1)?

4

**STATEMENT OF THE CASE**

## I.  FACTUAL BACKGROUND

The United States Immigration and Naturalization Service ("INS"), the predecessor to ICE, began issuing immigrations detainers in the 1950s.[1] The 1986 Anti-Drug Abuse Act "amended Section 287 of the [Immigration and Nationality Act] to address the issuance of detainers for aliens arrested for 'violation[s] of any law relating to controlled substances.'"[2] In response to this amendment, "the INS amended its regulations to address the issuance of detainers."[3] The INS promulgated two regulations, which were merged in 1997.[4] Codified as 8 C.F.R. § 287.7, the federal regulation outlining the ICE's detainer provisions has been in virtually its present form since 2003.[5] ICE's standard detainer form, Form 1-247, has been used since 1984.[6]

If ICE believes a person is removable and is in custody by a state or local law enforcement officer, it may take custody of the person through an immigration

---

[1] Kate M. Manuel, "Immigration Detainers: Legal Issues," Congressional Research Service, May 7, 2015, p. 4, https://fas.org/sgp/crs/homesec/R42690.pdf.

[2] *Id.*, p. 5 (quoting P.L. 99-570, §1751(d), 100 Stat. 3207-47 to 3207-48 (October 27, 1986)).

[3] *Id.*, p. 6.

[4] *Id.* (citing Dep't of Justice, INS, Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 *Federal Register* 10312, 10392 (March 6, 1997)).

[5] *Compare* 68 FR 35279, June 13, 2003 *with* 76 FR 53797, Aug. 29, 2011.

[6] Manuel, "Immigration Detainers: Legal Issues," p. 7.

detainer.[7] The detainers allow state law enforcement to hold the individual for up to 48 hours.[8]

These detainers are accompanied by an administrative warrant. Several courts have held that the combination of detainer and administrative warrant is sufficient to satisfy the warrant requirement under the Fourth Amendment. *Lopez-Lopez c. Cty of Allegan*, 321 F.Supp.3d 794, 799 (W.D. Mich. 2018); *see also Castrejon v. Jerome Cty.*, No. 1:20-vc-00462, 2022 WL 2869046 (D. Idaho, July 21, 2022); *Tenorio-Serrano v. Driscoll*, 324 F.Supp.3d 1053, 1066 (D. Ariz. 2018).

At the time Voces' Petition was filed, some Wisconsin counties, including Brown County, had maintained active Warrant Service Officer 287(g) agreements with ICE, pursuant to 8 U.S.C. § 1357(g), for some time. *See* (ECF 1-2, p. 22, ¶ 39 n.15.) In 2025, Walworth County entered into a 287(g) Memorandum of Agreement with ICE. Other counties, such as Kenosha, Marathon, and Sauk, had not entered into 287(g) agreements at the time Voces filed its Petition with the Wisconsin Supreme Court. *See, e.g.* (*Id.*, p. 18, ¶ 27 n.12.)  Since Voces filed its Petition, all Sheriffs who are parties to this action have entered into active 287(g) agreements with ICE. *See* (ECF 14-18.)

## II.    PROCEDURAL BACKGROUND

Voces filed a petition requesting the Wisconsin Supreme Court take jurisdiction of an original action in the Wisconsin Supreme Court on September 18,

---

[7] *Immigration Detainers: Background and Recent Legal Developments*, Congress. Gov (Oct. 10, 2020), https://www.congress.gov/crs-product/LSB10375
[8] *Id.*

2025. (ECF 1-2.)  The Wisconsin Supreme Court ordered the Sheriffs to file a response to the Petition, which they did on October 7, 2025. (ECF 1-2, p. 38; ECF 12-3.) On December 3, 2025, the Wisconsin Supreme Court issued an order granting Voces' petition for leave to commence an original action and assumed jurisdiction over the action. (ECF 1-2, pp. 93-96.)

Within 30 days of the Wisconsin Supreme Court's Order, on December 30, 2025, the Sheriffs removed the original action to the United States District Court for the Western District of Wisconsin. (ECF 1.) Voces filed a motion to remand, (ECF 11, 12), the Sheriffs responded, (ECF 13), and Voces replied. (ECF 22.) On May 15, 2026, the District Court issued an order granting the motion to remand the case under 28 U.S.C. § 1447(c), finding that the Sheriffs' removal was untimely. (ECF 23.)[9]

## SUMMARY OF ARGUMENT

The district court erred by finding that the Sheriffs' notice of removal to federal court was untimely. Specifically, the district court incorrectly held that the removal clock began to run when Voces filed its Petition with the Wisconsin Supreme Court. Because a federal court cannot provide the relief that Voces sought in its petition— namely the Wisconsin Supreme Court's original jurisdiction—the Petition could not have been brought in federal court. Therefore, removal was not possible until the

---

[9] Subsequent to the District Court's order, the United States filed a motion to intervene in the Wisconsin Supreme Court original action. *See* Docket: https://wscca.wicourts.gov/case/2025AP002121. On July 6, 2026, the Wisconsin Supreme Court issued an order holding the case before it "in abeyance pending further order of the court." *See id.* The parties are "to advise [the] court in writing of the disposition of [this] appeal[.]" *Id.* The United States' motion to intervene is also currently held in abeyance. *Id.*

7

Wisconsin Supreme Court accepted original jurisdiction of the action, and removal was timely. In addition, the Sheriffs did not waive their right to removal by responding, pursuant to the Wisconsin Supreme Court's order, to the Petition.

After finding removal was untimely, the district court did not address the other arguments in Voces' motion for remand. If this Court decides to address these other arguments, remand is improper because Voces' claims depend on resolution of a substantial question of federal law, and therefore removal is proper under 28 U.S.C. § 1441. In addition, *Pennhurst State School & Hospital v. Halderman* does not limit the power of federal courts to hear this case. *See* 465 U.S. 89, 106 (1984). Finally, removal is proper because the Sheriffs fulfill all of the requirements for federal officer removal under 28 U.S.C. § 1442(a)(1).

## ARGUMENT

### I.   STANDARD OF REVIEW

"28 U.S.C. § 1447(d) permit[s] a court of appeals to review any issue in a district court order remanding a case to state court where the defendant premised removal in part on the federal officer removal statute, § 1442[.]" *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 234 (2021). This Court "review[s] the propriety of the removal of a state-court action de novo." *People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848 (7th Cir. 2024) (citing *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018)).

## II.    THE DISTRICT COURT ERRED IN FINDING THE NOTICE OF REMOVAL WAS UNTIMELY

Under Seventh Circuit precedent, "[t]he 30-day removal clock does not begin to run until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013). Here, the district court erred by finding that the Sheriffs' notice of removal to federal court was untimely. Specifically, the district court held that the notice was untimely because the 30-day clock found in 28 U.S.C. § 1446(b)(1) began to run when Voces filed its petition for leave to commence an original action in the Wisconsin Supreme Court, rather than when the petition was accepted. The district court reached this conclusion by focusing on the comparison of the petition to a complaint, or other "initial pleading setting forth the claim for relief[.]" 28 U.S.C. § 1446(b)(1).

As will be explained below, the fundamental flaw in the district court's reasoning is that Voces' petition for leave to commence an original action "could [not] have been brought originally in federal court." *Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019). Nor is a petition for leave to commence an original action in the Wisconsin Supreme Court an "initial pleading" for purposes of 28 U.S.C. § 1446(b)(1). Unless and until the petition was accepted, the relief sought by the petition was the original jurisdiction of the Wisconsin Supreme Court, which could not be granted by a federal district court. Therefore, the petition could not have been "the initial pleading setting forth the claim for relief" that triggered removability. Under Wisconsin law, the petition for leave to commence an original action does not

9

become an initial pleading until the Wisconsin Supreme Court decides to accept jurisdiction over such a petition. Because the Sheriffs filed their notice of removal within 30 days of the Wisconsin Supreme Court granting the petition for an original action, removal was timely.

### a. The Petition for an Original Action Could Not Have Been Filed in Federal Court.

The Court:

has long held that a district court, when determining whether it has original jurisdiction over a civil action, should evaluate whether that action could have been brought originally in federal court. This requires a district court to evaluate whether the plaintiff could have filed its operative complaint in federal court, either because it raises claims arising under federal law or because it falls within the court's diversity jurisdiction.

587 U.S. at 441 (internal citations omitted). Voces' petition for an original action could not have been filed in federal court. Therefore, it could not be an initial pleading for purposes of 28 U.S.C. § 1446(b)(1).

As explained in the district court's decision, "on September 18, 2025, Voces de la Frontera filed a petition in the Wisconsin Supreme Court *asking it to exercise jurisdiction* as an original action." (ECF 25-2, p. 2) (emphasis added). The district court decision recognized that, "an action is removable if it originally could have been brought in federal court." (*Id.*). However, the balance of the decision focused on the fact that neither the parties nor the district court were able to find any "case law addressing whether a petition to a state supreme court seeking its exercise of original jurisdiction qualifies as an 'initial pleading' for purposes of § 1446(b)(1)," and focused on which party's arguments were more persuasive. (ECF 25-2, p. 3.) The fundamental

10

error in this approach is that the court assumed the petition for an original action *could have been brought* in federal court because there were "federal legal issues presented by the petition[.]" (*Id.*, p. 7). However, despite the fact that the petition presents federal legal issues, it is not an initial pleading that can be removed. The petition for an original action could not have been brought in federal court because the relief sought by Voces—the Wisconsin Supreme Court's exercise of original jurisdiction— is uniquely within the discretion of the Wisconsin Supreme Court and therefore could not have been obtained in federal court. A petition to the Wisconsin Supreme Court for leave to commence an original action is simply a request to the Wisconsin Supreme Court to exercise jurisdiction over a case; it does not become an initial pleading until the Wisconsin Supreme Court accepts the case and defines the issues that will be before it. It is not until the Wisconsin Supreme Court accepts a case and defines the issues over which it will exercise jurisdiction that there exists a document, "on its face or in combination with earlier-filed pleadings [that] provides specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable." *Walker*, 727 F.3d at 825.

Case law regarding attempted removal of petitions that do not have a federal district court analogue, such as pre-action discovery petitions in states that have such procedural mechanism, is instructive. For instance, in *Teamsters Local 404 Health Services & Insurance. Plan v. King Pharmaceuticals., Inc.*, "the petitioner sought the pre-action disclosure of agreements Respondents entered into with Teva to resolve on-going patent litigation regarding Teva's creation and sale of a generic version of

11

the EpiPen." 906 F.3d 260, 262-63 (2d Cir. 2018). "[New York civil procedure] allows a petitioner to initiate a special proceeding, before commencing a plenary action on the merits, to obtain disclosure 'to aid in bringing an action, to preserve information or to aid in arbitration.'" *Id.* at 264 (quoting N.Y. C.P.L.R. § 3102(c)). "Generally, the petitioner must show that he 'has a meritorious cause of action and that the information sought is material and necessary' to an action to right the wrong." *Id.* (quoting *Sandals Resorts Intern'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 925 N.Y.S.2d 407, 411 (1st Dep't 2011)).

In *Teamsters*, the respondents attempted to remove the "pre-action disclosure petition" to federal court. *Id.* at 262. On appeal, the Second Circuit Court of Appeals "h[e]ld that a petition filed in New York Supreme Court under CPLR § 3102(c) is not a 'civil action' removable to federal court under 28 U.S.C. §§ 1441, 1446." *Id.* In reaching this conclusion, the court noted that, "[t]he federal removal statute provides that '[a]ny *civil action* brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[.]'" *Id.* at 264 (quoting 28 U.S.C. § 1441(a)) (emphasis in original). Among other rationale, the court noted that, "[p]ermitting removal of petitions under § 3102(c) . . . would significantly undermine New York's policy of granting potential litigants a forum to obtain information to assist in deciding how, or whether, to institute a civil action. In contrast to § 3102(c), the Federal Rules of Civil Procedure do not authorize comparable discovery." *Id.* at 267. In addition, "[t]he adequacy of a CPLR § 3102 petition 'rests within the sound discretion' of the trial court." *Id.* at 265 (quoting *In re*

12

*Peters*, 34 A.D.3d 29, 821 N.Y.S.2d 61, 66 (1st Dep't 2006)). Similarly, in *Oshkosh Truck Corp. v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, the court ruled that an action was prematurely removed when it was removed after service of a summons and the submission of an affidavit for purposes of obtaining precomplaint discovery, but before the existence of a complaint. *See* 67 F.R.D. 122 (E.D. Wis. 1975).

Just as the Federal Rules of Civil Procedure do not authorize pre-action discovery petitions, they do not authorize a federal court to determine whether the Wisconsin Supreme Court will grant a petition for an original action. If it were otherwise, it would violate the principles of federalism. Though a petition for an original action, like a pre-action discovery petition, must evidence an underlying "meritorious cause of action," 906 F.3d at 264, the purpose of the petition is to give the Wisconsin Supreme Court the necessary background to exercise its considerable discretion in granting or denying such a petition. *See, e.g.*, *Hawkins v. Wisconsin Elections Comm'n*, 2020 WI 75, ¶ 5, 393 Wis. 2d 629, 948 N.W.2d 877 ("Accordingly, we exercise our discretion to deny the petition for leave to commence an original action."). Therefore, a petition for an original action is not a "civil action" for purposes of 28 U.S.C. § 1441(a), and therefore is not removeable. And, even when the Wisconsin Supreme Court exercises its discretion to accept jurisdiction over such a petition, it need not accept jurisdiction of all issues raised in such a petition. *Cf. Clarke v. Wisconsin Elections Commission*, 2023 WI 70, 409 Wis. 2d 372, 375, 995 N.W.2d 779 (granting petition for leave to commence an original action only as to certain issues).

13

In other words, a respondent to such a petition cannot rely upon the petition alone as unambiguously revealing the presence or absence of a federal question because the petition does not conclusively establish the issues to be resolved if the Wisconsin Supreme Court takes jurisdiction. It is not until the Wisconsin Supreme Court accepts jurisdiction and defines the issues in the proceeding that the case becomes removable.

### b. The Sheriffs Did Not Waive Their Right of Removal.

Towards the end of its decision, the district court suggested the Sheriffs were "sit[ting] on their hands [to] see if the Wisconsin Supreme Court would reject the petition." (ECF 25-2, p. 6). In doing so, the district court equated waiting for the Wisconsin Supreme Court to grant the petition for an original action with "test[ing] the waters in state court" by filing a motion to dismiss before noticing removal. *See id.* (discussing *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 188 (4th Cir. 2017)). There are two fundamental problems with this conclusion. First, as discussed above, a removable action did not exist until the Wisconsin Supreme Court opted to exercise its original jurisdiction and second, the Sheriffs' behavior is not the sort of forum-shopping that waives a party's right to remove a case to federal court.

The second point is obvious by way of comparison to the conduct at issue in *Northrop Grumman*. In that case, "[i]n March 2015, Northrop Grumman filed suit against DynCorp" in state court. 865 F.3d at 184. "In September 2015, DynCorp filed counterclaims in the state court against Northrop Grumman[.]" *Id.* "Northrop Grumman later filed a demurrer to the counterclaims[,]" which were overruled in

14

part and sustained in part. *Id.* In response, "DynCorp filed amended counterclaims," which Northrop Grumman answered in December 2015. *Id.* "The parties also engaged in extensive discovery," and trial was scheduled to take place in July 2016. *Id.*

"In the midst of these state court proceedings, on April 22, 2016, Northrop Grumman filed a separate, administrative claim for contract interpretation with the United States Army, pursuant to the Contract Disputes Act[.]" *Id.* at 184-85. "Northrop Grumman [then] filed a motion to dismiss or stay in state court based on the pending CDA claim. Nevertheless, one week later, Northrop Grumman proceeded to advance the state court litigation by filing a motion in that court requesting a jury trial." *Id.* at 185. Finally, on May 12, 2016, Northrop Grumann "filed its notice of removal[.]" *Id.*

Based on this course of conduct, over 14 months of litigation, the Fourth Circuit found that "Northrop Grumman repeatedly sought to use the state court proceedings to its advantage, and thereby waived its right to removal." *Id.* at 188. In reaching this conclusion, the court "also observe[d] that Northrop Grumman filed its notice of removal the night before a scheduled hearing in state court regarding DynCorp's motion for discovery sanctions." *Id.* at188 n.6. There is no such gamesmanship at play here—Sheriffs simply waited until there was a removable action before removal to federal court.

This is true for the same reason that Voces' petition for original action is not an "initial pleading" and the Sheriffs' response is neither an answer nor a motion to

15

dismiss, and it certainly is not "equivalent to [both.]" (ECF 25-2, p. 5). This is evident from the purpose of each document, as well as their practical effects.

"The purpose of the complaint is to acquaint the adverse party and the court of the cause of action relied upon by the plaintiff." *Wright v. St. Mary's Hosp. of Franciscan Sisters, Racine*, 265 Wis. 502, 506, 61 N.W.2d 900, 902 (1953). In circuit court proceedings, issue is joined upon service of the answer. *See Snowberry v. Zellmer*, 22 Wis. 2d 356, 358, 126 N.W.2d 26, 28 (1964) ("Issue was joined in November, 1961, upon service of the original answer"). Once an answer is filed, the parties may commence the normal business of litigation, irrespective of the contents of the answer. The purpose of "[a] motion to dismiss for failure to state a claim [is to] 'test[] the legal sufficiency of the complaint.'" *Andruss v. Divine Savior Healthcare Inc.*, 2022 WI 27, ¶ 15, 401 Wis. 2d 368, 973 N.W.2d 435 (quoting *DeBruin v. St. Patrick Congregation*, 2012 WI 94, ¶11, 343 Wis. 2d 83, 816 N.W.2d 878). If a motion to dismiss is denied, the defendant has ten days to file an answer, and the case proceeds. *See* Wis. Stat. § 802.06(1)(a) ("if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action"). The effect of a successful motion to dismiss is dismissal of some or all causes of action, with or without prejudice.

The purpose of a petition for original action, however, is to give the Wisconsin Supreme Court the information it needs regarding "the issues presented by the controversy," "the facts necessary to an understanding of the issues," "the relief sought," and "the reasons why the court should take jurisdiction," to decide whether

16

to take jurisdiction of an original action. *See* Wis. Stat. § 809.70(1)(a)-(d). Because the petition is for the benefit of the court and not the respondent, a petition, unlike a complaint, does not necessarily require a response—that is left to the discretion of the Wisconsin Supreme Court. *See* Wis. Stat. § 809.70(2) ("[t]he court may deny the petition or may order the respondent to respond and may order oral argument on the question of taking original jurisdiction."). And, as already discussed, the petition cannot be relied upon as a complaint setting forth the issues that will ultimately be in controversy because the Wisconsin Supreme Court does not need to accept jurisdiction of all issues raised in such a petition.

Indeed, whether to grant or deny a petition for leave to commence an original action at all is up to the discretion of the Wisconsin Supreme Court. *See, e.g., Hawkins v. Wisconsin Elections Comm'n*, 2020 WI 75, ¶ 5, 393 Wis. 2d 629, 948 N.W.2d 877 ("Accordingly, we exercise our discretion to deny the petition for leave to commence an original action."). The court considers three factors when considering whether to grant a petition for an original action. *See generally* Wis. Const. art. VII, § 3. The circumstances underlying the petition must demonstrate some "exigency," *Petition of Heil*, 230 Wis. 428, 443-46, 284 N.W. 42, 48-50 (1939), to justify the departure from the conventional course of litigation, which circumstances will cause the petitioner "great and irreparable hardship," without the court's exercise of original jurisdiction. *Application of Sherper's Inc.*, 253 Wis. 224, 228, 33 N.W.2d 178 (1948). Further, an original action is only appropriate when it presents limited material factual disputes, such that the court can reach "a speedy and authoritative determination" on the legal

17

questions presented in the petition. *Heil*, 230 Wis. at 446; *see also State ex rel. Kleczka v. Conta*, 82 Wis. 2d 679, 683, 264 N.W.2d 539 (1978). Finally, an original action petition must raise questions of statewide "importance" or "*publici juris.*" *Heil*, 230 Wis. at 443-46; *Wis. Prof'l Police Ass'n v. Lightbourn*, 2001 WI 59, ¶ 4, 243 Wis. 2d 512, 627 N.W.2d 807 ("significantly affect[ ] the community at large"). The supreme court's power to "tak[e] original jurisdiction should be [and is] used sparingly[.]" *State ex rel. Ozanne v. Fitzgerald*, 2011 WI 43, ¶ 147, 334 Wis. 2d 70, 798 N.W.2d 436 (Crooks, J., concurring in part).

Historically, the filing of a petition for leave to commence an original action was not viewed as commencing an action. *See In re Exercise of Original Jurisdiction of Supreme Court*, 201 Wis. 123, 229 N.W. 643, 645 (1930) (stating "an order to show cause upon the merits will not be granted in the first instance because that amounts to the commencement of an action"). Rather, historically, the Wisconsin Supreme Court stated that "[i]f leave be granted, the complaint in the action should then be served upon the opposite party and the case proceed regularly according to the established rules of the court." *Id.* at 645. In later cases, the Wisconsin Supreme Court has opted to treat the petition itself as the operative complaint, *but only after deciding to exercise jurisdiction. See, e.g., Labor and Farm Party v. Elections Bd., State of Wis.*, 117 Wis. 2d 351, 352 n.1, 344 N.W.2d 177, 178 (1984) (per curiam) (concluding the petition and the denials contained in the response to the petition would stand as the complaint and answer); *State ex rel. Sonneborn v. Sylvester*, 25 Wis. 2d 177, 130 N.W.2d 569 (1964) (per curiam) (describing order granting leave to

18

commence an original action and order that the petition shall be deemed to constitute the complaint), overruled on other grounds by *Pavalon v. Thomas Holmes Corp.*, 25 Wis. 2d 540, 131 N.W.2d 331 (1964).

Indeed, Wis. Stat. § 809.70(3) provides further support for concluding that a petition for leave to commence an original action is not a pleading that commences the deadline for removal. That statute provides that the Wisconsin Supreme Court, "if it grants the petition, may establish a schedule for pleading, briefing and submission with or without oral argument." In other words, the statute contemplates that pleadings, if the Wisconsin Supreme Court desires them, will follow the decision to grant the petition. This indicates that the petition itself is not a pleading, at least not until the Wisconsin Supreme Court orders that it will stand as the operative pleading in an order accepting jurisdiction.

Nor is it correct to equate the Sheriffs' response to the petition to a motion to dismiss. Although the response touched on the merits of Voces' legal claims, the merits of those claims were not at issue. The purpose of the response was not to "test the waters" on Voces' legal claims, but to explain to the Wisconsin Supreme Court why the case did not justify an exercise of original jurisdiction by the Wisconsin Supreme Court. And, had the Wisconsin Supreme Court declined to exercise its original jurisdiction, Voces could have initiated the action in the circuit court. *See, e.g., State ex rel. Gutbrod v. Wolke*, 49 Wis. 2d 736, 740, 183 N.W.2d 161, 163 (1971) ("On December 3, 1970, the Wisconsin Supreme Court declined to exercise its original jurisdiction, but authorized an accelerated appeal from the trial court order. On

19

December 7, 1970, appellant filed a second petition for writ of habeas corpus in the circuit court for Milwaukee county[.]"). Thus, regardless of whether the Wisconsin Supreme Court chose to grant or deny the petition for an original action, it was procedurally proper for the Sheriffs to wait for the outcome of that decision. Prior to the Wisconsin Supreme Court ruling on the petition, the relief sought was original jurisdiction, which would not be imparted by a federal court. After the petition was granted, the original action was removable on the grounds discussed below. If, counterfactually, the petition had been denied, Voces would have been free to file their claims "under Wisconsin's uniform declaratory judgment acts" in Wisconsin circuit court. (ECF 25-2, p. 4.) Such an action would have been removeable on the same grounds as the original action. Therefore, the Sheriffs were not "testing the waters" in state court, but rather waiting to see which state court they would ultimately remove the action from.

If the petition alone cannot be the triggering pleading under 28 U.S.C. § 1446(b)(1), something else has to be. And, as discussed above, the triggering event for removal occurs once the Wisconsin Supreme Court issues an order accepting jurisdiction of the case and identifying the issues to be resolved. It is at that point that there exists a document, "on its face or in combination with earlier-filed pleadings [that] provides specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable." *Walker*, 727 F.3d at 825.

Finally, the discussion in *Jensen v. Wisconsin Elections Board* of removal following the grant of a petition for leave to commence an original action is important for two reasons. *See* 2002 WI 13, ¶ 9, 249 Wis. 2d 706, 639 N.W.2d 537 ("In 1982, this court granted a petition for leave to commence an original action in the matter of legislative redistricting, but its jurisdiction was brief and inconsequential: the case was promptly removed to federal court in Milwaukee and consolidated with a redistricting lawsuit already pending there.") (discussing W*isconsin State AFL-CIO v. Elections Bd.*, 543 F. Supp. 630, 632-33 (E.D. Wis. 1982)). First, it demonstrates that removal of an original action accepted by the Wisconsin Supreme Court can be proper. Second, it suggests that removal occurs after the Wisconsin Supreme Court has accepted jurisdiction. Of course, timeliness is not specifically addressed in the court's decision. Regardless, *Jensen*'s guidance is illuminating and demonstrates that the Petition only becomes a "pleading" once there is an order accepting jurisdiction and setting the issues over which the Wisconsin Supreme Court will exercise jurisdiction. Thus, in this case, the initial pleading starting the 30-day clock was the Petition as modified by the Wisconsin Supreme Court's December 3, 2025 order accepting jurisdiction. Until the Wisconsin Supreme Court accepted original jurisdiction of the underlying action, one necessary predicate for removal—an action that could have been brought in federal court—was not present. Because the Sheriffs filed their notice of removal within 30 days of the Wisconsin Supreme Court accepting original jurisdiction of this action, removal was timely and the district court's decision remanding the case to state court should be reversed.

21

### III.    REMOVAL IS PROPER UNDER 28 U.S.C. § 1441.[10]

"A case arises under federal law if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Trs. of Carpenters' Health & Welfare Tr. Fund of St. Louis v. Darr*, 694 F.3d 803, 806 (7th Cir. 2012) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689– 90 (2006)). When determining whether a case presents a removable federal question, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "Where all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which

---

[10] The district court "beg[an] and end[ed] its discussion with timeliness, which" the district court viewed as "dispositive." (ECF 25-2, p. 2.) However, "[t]his court can affirm or reverse for any reason shown by the record, whether or not it was relied upon the District Court." *French v. Corrigan*, 432 F.2d 1211, 1214 (7th Cir. 1970). Further, when this Court can review a remand order under § 1447(d), this Court's authority extends to the entirety of the remand order. *Barker*, 171 F.4th at 989-90. If this Court is inclined to consider the propriety of removal, after addressing the issue of timeliness, rather than remanding the issue to the district court, removal is proper for the reasons outlined below.

22

can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313-14).

In its motion to remand in the district court, Voces attempted to portray the issues raised in this proceeding as narrow ones, implicating only state law. Voces argued that it is simply seeking a declaration that certain state statutes do not provide authority for Wisconsin law enforcement officers to comply with immigration detainers when all state law bases for custody have ended. (ECF 12, p. 4.) The problem with Voces' argument is that the relief it seeks in its underlying Petition, and the issues the Wisconsin Supreme Court identified as questions presented, are much broader.

For example, Voces does not simply seek a declaration that certain state statutes do not provide authority for and/or prohibit law enforcement officers from complying with detainer requests. Voces also seeks an injunction "prohibiting the [Sheriffs] from holding a person pursuant to an ICE detainer after they were otherwise entitled to release under state law." (ECF 1-2, p. 28.) And, Voces defines the issue in this case as: "[m]ay Wisconsin law enforcement officers deprive a person of liberty after all state law bases for custody have ended, solely on the basis of a federal immigration detainer?" (*Id.*, p. 8). The issues raised in this case are thus not limited to a declaration as to the meaning of the specific state statutes that Voces identifies. To grant Voces the relief it seeks, a court will necessarily need to conclude that there are no other sources providing the Sheriffs with authority to comply with ICE detainers.

23

To be sure, Voces argues in this case that state law expressly prohibits the Sheriffs from complying with ICE detainers.[11] And, if this were just a dispute over whether Wis. Stat. § 818.01(1) prohibits the Sheriffs from complying with ICE detainers, then an argument that, notwithstanding Wis. Stat. § 818.01(1), federal law authorizes the Sheriffs to comply with detainers might properly be characterized as a preemption defense that does not justify federal question removal (but would justify federal officer removal).

But, this case is not so limited. Voces also argued below that, even if Wis. Stat. § 818.01(1) does not prohibit the Sheriffs from complying with ICE detainers, it does not authorize them either. Voces seems to argue there must be an express grant of authority to the Sheriffs to comply with such detainer requests. And Voces is arguing that the Sheriffs (setting aside the question of whether there is a state law prohibition on complying with ICE detainers) do not have authority to comply with such detainers. In other words, in seeking the relief they seek, Voces is necessarily seeking a determination that there is no source of authority for the Sheriffs to comply with ICE detainers. This necessarily places at issue every source of authority on which the Sheriffs may rely.

---

[11] Of course, the Sheriffs dispute this—the primary statute on which Voces relies (Wis. Stat. § 818.01(1)) only addresses the ability to arrest persons in a civil action in Wisconsin courts. When a sheriff complies with a federal immigration detainer and administrative warrant, the sheriff is not making an arrest in a civil action in a Wisconsin court; Wis. Stat. § 818.01(1) is not applicable to the situation presented.

The Sheriffs believe their authority derives from multiple sources. Some of those rest on state law—for example, the Sheriffs believe such authority derives from their constitutional and common law powers and duties as constitutional officers, which include maintaining law and order and preserving the peace. *See, e.g.*, *Kocken v. Wisconsin Council 40, AFSCME, AFL-CIO*, 2007 WI 72, ¶ 39, 732 N.W.2d 828. Such authority also derives from state statutes setting forth the duties of Wisconsin sheriffs, including Wis. Stat. §§ 59.27 and 59.28. But the Sheriffs also believe that such authority can come from federal law as well.

For example, the Sheriffs contend that 8 U.S.C. § 1357(g)(1) and/or (10), as well as the 287(g) agreements that each Sheriff has now executed with ICE, provide authority to them to comply with ICE detainers. The Wisconsin Supreme Court recognized this, which is why the Wisconsin Supreme Court in its Order directed the parties to brief the following questions, each of which presents substantial questions of federal law:

> What impact, if any, does a sheriff's entry into a formal agreement with the federal government pursuant to 8 U.S.C. § 1357(g)(1)—commonly referred to as a "287(g) agreement"—have on the issue stated in the "Issue Presented" section of the original action petition, paying particular attention to the statutory phrase "consistent with State and local law" in 8 U.S.C. § 1357(g)(1); and

> What impact, if any, does the fact that a sheriff's department participates in immigration enforcement pursuant to 8 U.S.C. § 1357(g)(10), without a 287(g) agreement, have on the issue stated in the "Issue Presented" section of the original action petition[.]

(ECF 1-2, p. 94.) As a reminder, the Issue Presented section of Voces' Petition asks whether Wisconsin law enforcement officers may "deprive a person of liberty after all

25

state law bases for custody have ended, solely on the basis of a federal immigration detainer?" (*Id.*, p. 9.) Voces now argues that its case is just about determining whether state law authorizes such deprivations of liberty, but the issue presented is not so limited and, as the Wisconsin Supreme Court recognized, necessarily will require a court to determine questions of federal law.

Again, this reliance on federal law is only a preemption defense if the Sheriffs are relying on the federal law to preempt a conflicting state law or to assert other forms of preemption. But, as already discussed, Voces has also placed at issue the question of whether (absent an express prohibition under state law) there is an affirmative grant of authority to comply with ICE detainers and claim no such authority exists. Reliance on federal law in this circumstance is not a preemption defense, but is instead a recognition of the fact that the relief Voces seeks necessarily raises the question of whether federal law provides authority for the Sheriffs to comply with ICE detainers.

There are other federal questions that will necessarily need to be resolved in this case. Setting aside whether 8 U.S.C. § 1357(g)(1) and (10) provide authority to the Sheriffs to comply with ICE detainers, there is also the question of whether state and local law enforcement officers have implicit authority to do so. For example, prior to the United States Supreme Court's decision in *Arizona v. United States*, 567 U.S. 387 (2012), some federal courts had held that, in the absence of "state or local law to the contrary," "state and local police officers had implicit authority within their respective jurisdictions 'to investigate and make arrests for violations of federal law,

26

including immigration laws.'" *United States v. Santana-Garcia*, 264 F.3d 1188, 1194 (10th Cir. 2001) (quoting *United States v. Vasquez–Alvarez*, 176 F.3d 1294, 1295 (10th Cir.1999)). That is, the Tenth Circuit has not held that in order for "a state law enforcement officer [to] arrest a suspect for violating federal immigration law, state law must *affirmatively* authorize the officer to do so" *Id.* at 1193–94. Similarly, the Seventh Circuit has held "that Illinois officers have implicit authority to make federal arrests." *United States v. Janik*, 723 F.2d 537, 548 (7th Cir. 1983) (discussing federal gun crimes). Here, the Sheriffs intend to rely, not only on 8 U.S.C. § 1357(g)(1) and (10), but also on such inherent authority.[12]

Below, Voces compared this case to *Flores v. City of Baldwin Park*, No. CV 14-9290-MWF, 2015 WL 756877 (C.D. Cal. Feb. 23, 2015). That case involved a plaintiff asserting state law causes of action seeking to hold police liable for violating a state statute that prohibited local law enforcement officers from complying with ICE detainers absent satisfaction of certain conditions. The court held that the plaintiff's

---

[12] In *Arizona*, the Court "considered a facial challenge to four sections of an Arizona law commonly referred to as S.B. 1070" and held certain of those sections preempted by federal law. *Keller v. City of Fremont*, 719 F.3d 931, 939 (8th Cir. 2013) (discussing 567 U.S. 387). In the wake of *Arizona*, some courts have questioned whether there can still be implicit authority for state law enforcement officers to effectuate federal arrests. For instance, in *Lunn v. Commonwealth*, the Massachusetts Supreme Court stated that "it is questionable whether a theory of 'inherent' or 'implicit' State authority continues to be viable in the immigration context after the United States Supreme Court's decision in [*Arizona v. United States*, 567 U.S. 38 (2012)], which severely curtailed, on Federal preemption grounds, the power of State and local police to act in Federal immigration matters." 477 Mass. 517, 533, 78 N.E.3d 1143, 1157 (2017). The *Lunn* court "[a]ssum[ed] that the theory remain[ed] viable, and ha[d] not been foreclosed by the Supreme Court's decision in *Arizona,* a point of Federal law that [i]t need not decide, [but] nevertheless decline[d] to adopt it as a matter of Massachusetts law as a basis for authorizing civil immigration arrests." *Id.*

right to relief did not depend on the resolution of a substantial, disputed federal question because, to resolve the plaintiff's claims, the court would only need to determine whether the conditions under which the state law authorized detention were satisfied (a state law issue) and not federal law.

This case is not like *Flores*. As already discussed, Voces here does attempt to treat Wis. Stat. § 818.01(1) as a prohibition on compliance with ICE detainers, but the Petition (and the Wisconsin Supreme Court's Order) goes further than that and places at issue the question of whether—even absent an express prohibition on compliance with ICE detainers in Wisconsin law—law enforcement officers lack authority to comply with such detainers. As discussed above, resolving whether the Sheriffs have such authority necessarily requires resolution of the substantial and disputed federal question of whether federal law and/or the 287(g) agreements convey such authority to the Sheriffs.

Voces also suggested below that no federal issue is presented because the Sheriffs cannot rely on federal law to authorize their actions. There, Voces asserted that the United States Supreme Court has "held that where federal law does not preclude enforcement by local officers, authority for the arrest must be found in state or local law." (ECF 12, pp. 12-13.) This rule, however, does not apply when there is a federal statute providing such authority. As the Court explained in *United States v. Di Re*, it is "*in absence of an applicable federal statute* the law of the state where an arrest without warrant takes place determines its validity." 332 U.S. 581, 589 (1948) (emphasis added). "The Di Re doctrine applies only in the absence of a relevant

28

federal law." *United States v. Hall*, 543 F.2d 1229, 1232 (9th Cir. 1976). Where federal law is not silent and provides authority for the conduct, federal law can be relied upon. *See id.*

Here, the Sheriffs contend that there is an applicable federal statute that provided them with authority for their actions. Indeed, to the extent the Sheriffs are operating under 287(g) agreements with ICE, they are essentially deputized federal officers carrying out federal immigration law. Under the terms of the Brown County Sheriff's agreement with ICE, the Brown County Sheriff has the power and authority to serve and execute warrants for arrest for immigration violations and to serve warrants of removal on designated aliens in the county jail at the time of the alien's scheduled release from criminal custody. The Brown County Sheriff, and all other Sheriffs with 287(g) agreements, acts under a delegation of federal authority when it serves such warrants and is performing certain federal immigration officer functions, under the supervision of ICE. Under these circumstances, it is appropriate to look to federal law as providing authority for the Sheriffs' actions.

Finally, Voces may assert such agreements are valid "to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1). Voces may argue that this means a court must look to state law to determine whether an officer is authorized to make an immigration arrest and thus no federal issue is present. This Court should reject that argument.

Such an argument blurs the lines between two different issues. There is the question of whether state law *expressly prohibits* a law enforcement officer from

29

complying with ICE detainers and whether a law enforcement officer can nevertheless rely on a 287(g) agreement in that circumstance. But there is also the question of whether the federal statute and a 287(g) agreement can provide authority for state and local law enforcement to comply with ICE detainers when *state law is silent* as to their authority to do so.

Voces' position below appeared to be that the phrase "to the extent consistent with State and local law" in 8 U.S.C. § 1357(g)(1) means both (1) that state and local law will control if there is a conflict (i.e., if state or local law prohibit compliance with an ICE detainer) *and* (2) that there must be a grant of authority under state law to conduct civil federal immigration arrests for a 287(g) agreement to have any effect. The Sheriffs dispute this interpretation of 8 U.S.C. § 1357(g)(1). Setting aside what happens in the case of a conflict (i.e., if state law prohibits compliance with ICE detainers), the Sheriffs assert that the phrase "consistent with State and local law" would definitely allow federal law to provide authority for their actions when there is no express prohibition under state law. Indeed, if state law is silent as to the Sheriffs' authority to comply with federal immigration detainers, a federal statute granting them such authority is certainly consistent with (i.e., does not conflict with) state law.

This is another reason why there is a necessary, substantial, and disputed question of federal law in this case: this case necessarily will require resolution of the meaning of the phrase "to the extent consistent with State and local law" in 8 U.S.C. § 1375(g)(1). Voces is taking the position that the phrase "to the extent consistent with State and local law" means that "courts must look to state law to determine

30

whether a state officer is authorized to make an immigration arrest" and that "the legality of the challenged arrests depends entirely on state law." (ECF 12, pp. 13-14.) Voces is contending that "consistent with" means there must be a grant of authority to conduct such arrests in state law. The Sheriffs contend, however, that this phrase, at most, means they cannot violate state law in performing functions under a § 287(g) agreement but that, if state law is silent as to their authority, such a federal law granting them such authority and the § 287(g) agreement is consistent with state law.

## IV. *PENNHURST* DOES NOT STRIP THIS COURT OF AUTHORITY TO ENTERTAIN THIS CASE.

Voces argued below that *Pennhurst* categorically strips this Court of authority and compels remand because Voces seeks declarations about state law. *See* (ECF 12, pp. 14-15.) Not so. *Pennhurst* limits the power of federal courts to order state officials to comply with state law when the Eleventh Amendment is implicated. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Voces argued that the Sheriffs, as Wisconsin sheriffs, are state officers and thus *Pennhurst* (and Eleventh Amendment immunity) applies. They are wrong. Wisconsin sheriffs performing their law enforcement functions represent their counties and are county officers; the Eleventh Amendment does not apply. *See Abraham v. Piechowski*, 13 F. Supp. 2d 870, 874-79 (E.D. Wis. 1998). Indeed, as the court in *Abraham* explained, the history of legislative changes to Wis. Stat. § 895.46(1) "make[s] clear that the sheriff is a *county* official for purposes of any lawsuit against him or her in any official capacity because of acts committed while carrying out official duties." 13 F. Supp. 2d at 878. Because

31

the Sheriffs were operating as county officers, not state officers, the Eleventh Amendment (and thus *Pennhurst*) does not stand as a bar to federal court jurisdiction.

Moreover, *Pennhurst* does not require remand where the case is properly in federal court on an independent jurisdictional hook. Here, the removal rests on both federal question and federal officer grounds as articulated in the Sheriffs' Notice of Removal.

Voces invoked *Pennhurst* to argue that this Court "lacks authority" and "must remand." (ECF 12, p. 14.) But *Pennhurst* is an Eleventh Amendment limitation on the issuance of relief directing state officials to comply with state law; it is not a categorical bar to removal, nor does it preclude federal courts from adjudicating threshold federal issues, federal defenses, or dismissing claims that seek prohibited remedies.

*Pennhurst* stands for the proposition that a federal court may not order state officials to conform their conduct to state law; it does not erase federal jurisdiction otherwise conferred, nor does it prevent dismissal or resolution on independent federal grounds. *See* 465 U.S. at 106. Where a claim is removable under 28 U.S.C § 1441 or § 1442, a federal court may (a) adjudicate embedded or threshold federal questions, (b) entertain colorable federal defenses, and (c) deny relief that would violate *Pennhurst* without remanding the case on that basis. *See* 28 U.S.C § 1441; 28 U.S.C. § 1442.

Voces' own briefing in the district court conceded the presence of live federal issues (including how 8 U.S.C. 1357(g)(1) and (g)(10) interact with state-law

questions), and the Wisconsin Supreme Court's Order directed merits briefing on those federal provisions. The Petition necessarily raises disputed and substantial questions of federal law regarding 8 U.S.C. § 1357(g)—including the scope of cooperation under subsections (g)(1) and (g)(10), and the meaning of "consistent with State and local law." Those federal issues are embedded in Voces' requests and cannot be adjudicated without construing federal law. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005); *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The Wisconsin Supreme Court's Order expressly directed merits briefing on those federal questions. That is classic "arising-under" territory that *Pennhurst* does not eliminate.

Indeed—and again—in their motion to remand Voces portrayed its claims as narrower than they are. Voces asserted that the Petition "asks the Wisconsin Supreme Court to instruct Sheriffs, who are state officials, regarding their lack of state law arrest authority to detain persons on immigration detainers." (ECF 12, p. 15.) As discussed above, however, the Petition is broader than that, and asks for a broad declaration that Wisconsin law enforcement officers have no authority to detain individuals on the basis of federal immigration detainers once state law bases for custody have ended and an injunction against such detentions. Such a broad request necessarily requires a determination of whether, in the absence of state law arrest authority, such authority arises from federal law. In other words, to grant Voces the relief it seeks, a court will need to conclude that the federal laws at issue do not grant state law enforcement officers with such authority.

33

Moreover, removal is also proper under 28 U.S.C. § 1442(a)(1). As discussed more in-depth later in this brief, this Court has set out a straightforward four-part test for federal-officer removal, and the Sheriffs meet the requirements. *See Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180-82 (7th Cir. 2012). Section 1442 provides an independent avenue to federal court designed to ensure a federal forum where defendants acted under federal direction and assert colorable federal defenses.

*Pennhurst* does not convert every state-law question into a remand mandate. Where, as here, the Sheriffs removed on § 1442 and present a colorable federal defense, federal jurisdiction lies notwithstanding the presence of state-law theories, and the court can adjudicate the federal questions and defenses and address any state-law claims as supplemental or dismiss them on immunity grounds.

## V.     REMOVAL IS PROPER UNDER 28 U.S.C. § 1442

Pursuant to 28 U.S.C. § 1442(a)(1), a civil action commenced in state court may be removed to federal court if it is directed against, "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]" The statute requires that a defendant seeking removal show that, "it was a (1) 'person' (2) 'acting under' the United States, its agencies, or its officers (3) that has been sued 'for or relating to any act under color of such office,' and (4) has a colorable federal defense to the plaintiff's claim." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180–81 (7th Cir. 2012). "In construing statutes, 'unless the context indicates otherwise' the 'words "person" and "whoever" include corporations [and] companies ... as well as individuals.'" *Id.* at

34

1181 (quoting 1 U.S.C. § 1). Therefore, each Sheriff easily meets the first requirement. Voces challenged three § 1442 elements: "acting under," the causal nexus ("for or relating to"), and the presence of a colorable federal defense. The Sheriffs meet all three requirements.

### a. The Sheriffs were "Acting Under" Federal Officers

"The removal statute applies to private persons 'who lawfully assist' a federal officer 'in the performance of his official duty,' but 'only' if the private parties were 'authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law.'" *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 143 (2007) (internal citations omitted). This "prong is also not difficult to meet, as the term 'acting under' is construed broadly," such as "to encompass situations 'where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete.'" *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1096 (N.D. Ill. 2015) (quoting *Ruppel*, 701 F.3d at 1181). "[P]recedent and statutory purpose also make clear that the private person's 'acting under' must involve an effort to assist, or to help carry out, the federal supervisor's duties or tasks." *Watson*, 551 U.S. at 152. "Nothing in the binding precedent or the relevant statutes prevents voluntary agreements from bringing state defendants within the meaning of 1442(a)(1)." *Castillo v. Snyders*, 497 F.Supp.3d 299, 303 (N.D. Ill. 2020) (citing *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 942 n.1 (7th Cir. 2020)).

> ### i. Even though the decision to honor detainers may be voluntary, the Sheriffs are still "acting under" the federal government.

35

Voces argued the Sheriffs are not subject to federal "subjection, guidance, or control," relying on the detainers' "voluntary" character. (ECF, pp. 17-18.) But "the Supreme Court has approved removal involv[ing] defendants working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government." *Ruppel*, 701 F.3d at 1181. In the immigration context, holding a noncitizen to enable ICE to assume custody is precisely the sort of assistance the federal government would otherwise perform.

When a sheriff enforces an ICE detainer, the sheriff is "acting under" a federal officer and performing tasks the federal government would otherwise do itself, thereby satisfying the requirements for removal under 28 U.S.C. § 1442(a)(1). In *Castillo*, the county sheriff arrested Castillo for a traffic law violation. 497 F. Supp. 3d at 301. During booking, Castillo informed the sheriff that he was born in Mexico. *Id*. The sheriff's department then informed ICE it had detained an individual born in a different country and through a detainer, ICE indicated its intent to take Castillo into custody. *Id*. Castillo originally filed the suit in state court alleging Illinois state law claims including false imprisonment and abuse of process. *Id.* The sheriff filed a notice of removal based on 28 U.S.C. § 1442(a), and Castillo moved to remand. *Id*. The court denied the motion for remand, analyzing three elements required for removal under § 1442(a)(1). *Id*. at 301-02.

As it relates to the "acting under" requirement, the sheriff asserted he was acting at the "direction" of federal immigration officers when he acted pursuant to the ICE detainer. *Id*. at 303. Making the same arguments as Voces did below, Castillo

36

argued the sheriff was not acting under federal authority because the ICE detainers were mere requests and the sheriff did not need to comply with them. *Id*. The court explained voluntary agreements can support removal when a principal-agent relationship exists that satisfies the "acting under" requirement as indicated in *Watson*. *Id*. (discussing 551 U.S. at 156). Such an agency relationship arises "when one party manifests assent to act on behalf of a principal and subject to its control, and the principal manifests assent to the relationship." *Id*. (citing Restatement (Third) of Agency § 1.01 (2006); Restatement (Second) of Agency § 1 (1958)). The sheriff manifested his assent to act on behalf of ICE to effectuate an objective of the federal government through the temporary detainment of suspected undocumented individuals, allowing time for ICE to take the suspects into custody. *Id*. at 303-04. Moreover, the federal authorities manifested their intent for the sheriff to act on its behalf though the use of ICE detainers requesting the sheriff's assistance. *Id*. at 304. Therefore, the court held the sheriff's department and ICE formed an agency relationship for the purposes of § 1442, and thus was "acting under" federal authority. *Id*. Other courts have also determined the "acting under" requirement is met when a state law enforcement officer helps a federal officer from the United States carry out the federal officer's duties by complying with a detainer request. *See Amancio v. DePerry*, 654 F. Supp. 3d 145, 152 (D. Conn. 2023).

In the current case, the Sheriffs are "acting under" federal authority when they honor the ICE detainers. As the court held in *Castillo*, an agency relationship exists between the Respondent-Appellant Sheriffs and ICE. By the Sheriffs choosing to

37

honor the detainers, with or without a 287(g) agreement,[13] they are assisting ICE in effectuating a federal function, the enforcement of immigration law, therefore satisfying the "acting under" requirement.

### ii.    The Sheriffs sufficiently plead they are "acting under" the federal government.

Indeed, the arguments in favor of federal officer removal are even stronger here than they were in *Castillo*. In *Castillo*, there was no allegation the sheriff in that case had entered into a 287(g) agreement. 497 F. Supp. 3d at 304. Here, however, at the time of the Petition, one of the Sheriffs, Sheriff Delain, was a party to a 287(g) agreement with ICE. Such agreements essentially deputize local law enforcement to carry out federal immigration law. Under the terms of the Brown County Sheriff's agreement with ICE, the Brown County Sheriff has the power and authority to serve and execute warrants for arrest for immigration violations and to serve warrants of removal on designated aliens in the county jail at the time of the alien's scheduled release from criminal custody. The Brown County Sheriff, and any other Respondent-Appellant Sheriffs with 287(g) agreements, acts under a delegation of federal authority when it serves such warrants and is performing certain federal immigration officer functions, under the supervision of ICE. A copy of the referenced agreement                    is                    available                    here: https://www.ice.gov/doclib/287gMOA/287gWSO_BrownCoWI_10-16-2020.pdf.

---

[13] Sheriffs have entered into active 287(g) agreements with ICE. *See* (ECF 14-18).

Voces responded below by asserting that there is a pleading deficiency in the Notice of Removal because Sheriff Delain has failed to make the factual allegation that he personally is authorized law enforcement agency personnel under the 287(g) agreement between the Brown County Sheriff's Office and ICE and that, therefore, Sheriff Delain cannot argue that he is acting under the federal government due to the 287(g) agreement. This is a confusing argument, because Voces has not sued Sheriff Delain individually, but rather in his official capacity as the Sheriff of Brown County. Such an official capacity suit is not a suit against Sheriff Delain personally. *See McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997) ("We have explained that a suit against a governmental officer 'in his official capacity' is the same as a suit '"against [the] entity of which [the] officer is an agent[.]"'") The Sheriffs have demonstrated the existence of a 287(g) agreement between ICE and the Brown County Sheriff's office and that detentions in response to detainers are conducted under this agreement. It is a reasonable inference that such detentions are being conducted by authorized personnel within the Brown County Sheriff's Office and Voces has not alleged otherwise. Sheriff Delain—having been sued in his official capacity—does not need to demonstrate that he personally is acting under the 287(g) agreement to invoke federal officer removal.

Regardless, as demonstrated in *Castillo*, even outside a 287(g) agreement, coordinated detention and transfer at ICE's request constitutes assisting federal officers in executing federal removal functions. For instance, in *Castillo*, the sheriff did not enter into a formal written agreement but instead alleged 8 U.S.C. 1357(g)(10)

39

authorized him to comply with the ICE detainer. 497 F. Supp. 3d at 304. 8 U.S.C. 1357(g)(10) permits communications and cooperation outside a written agreement. *See* 8 U.S.C. 1357(g)(10). Thus, even if Sheriff Delain failed to plead he is acting pursuant to a 287(g) agreement, he is still "acting under" federal authority under 8 U.S.C. 1357(g)(10). For all of these reasons, the "acting under" prong for federal officer removal under 28 U.S.C. § 1442(a)(1) has been satisfied.

### b. The Claims are "For or Relating to" Acts Under Color of Federal Office.

The third prong is met when the defendant can show that, "the gravamen of the claim against [defendant] occur[ed] while it acted under color of federal authority." *Ruppel*, 701 F.3d at 1181. Courts in other jurisdictions have found that this prong was satisfied where, as here, "'a causal connection exists'" between a state officer's "action and the guidance he received from ICE." *Amancio*, 654 F. Supp. 3d at 153 (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). This Court has recognized "Congress broadened federal officer removal to action, not just *casually* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Baker v. Atlantic Richfield Company*, 962 F.3d 937, 943 (7th Cir. 2020) (emphasis in original) (citations and quotations omitted).

The requirement of acting under color of federal authority is sufficiently alleged when the essence of the claim arises from law enforcement's actions to assist federal authorities in their federal objectives. *Castillo*, 497 F. Supp. 3d at 306. In *Castillo*, the sheriff alleged he acted under the color of federal law because his actions in detaining Castillo were causally connected to the ICE detainer request. *Id*. at 305.

40

The court held that even though "the Sheriff acted voluntarily to assist federal authorities in the completion of their function [] those actions [were] casually connected to Plaintiff's claims." *Id.* at 306. Here, the alleged injury exists because ICE issued detainers or administrative warrants and the Sheriffs followed federal direction, which is more than enough to meet *Baker*'s "connection or association" standard. *See Castillo*, 497 F. Supp. 3d at 305-06; *see also Amancio*, 654 F. Supp. 3d at 153.

### c. The Sheriffs have a Colorable Federal Defense

Finally, the federal defense requirement means that "the defense only be colorable, instead of 'clearly sustainable[.]'" *Ruppel*, 701 F.3d at 1182 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). "Under § 1442(a)(1), the Court asks only whether the alleged federal defense is plausible, not whether it is correct." *Castillo*, 497 F.Supp.3d at 307. "Courts have imposed few limitations on what qualifies as a colorable federal defense. At its core, the defense prong requires that the defendant raise a claim that is 'defensive' and 'based in federal law.'" *Isaacson v. Dow Chemical Co.*, 517 F.3d 129 (2d Cir. 2008) (quoting *Mesa v. California*, 489 U.S. 129, 129-30 (1989)). For instance, federal preemption can serve as a colorable federal defense for purposes of federal officer removal. *See, e.g., Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 347 (5th Cir. 2024) ("United's federal preemption defense is also colorable for purposes of federal officer removal."). Thus, in *Castillo*, the court allowed for federal officer removal under the similar circumstances presented in that case, in which the sheriff asserted a preemption defense. 497 F. Supp. 3d at 306-07. So, too, have the Sheriffs here.

41

Voces protested below that it did not have fair notice of the preemption defense the Sheriffs wish to assert and claimed the Sheriffs have not said which federal law or laws allegedly preempt Wis. Stat. § 818.01(1). (ECF 12, p. 24.) Simultaneously, however, Voces asked the district court to view the Sheriffs' arguments about 287(g) agreements (which would include the Sheriffs' reliance on the statue underlying those agreement, 8 U.S.C. § 1357(g)) as the assertion of a preemption defense. (ECF 12, p. 14.) Voces is well-aware of the federal statutes on which the Sheriffs are relying to support their preemption defense and, indeed, argued the merits of that defense. (ECF 12, pp. 24-26.) And, although Voces argued the Sheriffs have not stated what kind of preemption they are raising, (ECF 12, p. 24), pleading requirements do not extend so far as to require the affirmative pleading of the legal theories on which a litigant will rely. 621 F. Supp. 2d at 662.

Below, Voces also attacked the merits of the Sheriffs' preemption defense under the guise of an argument that such a defense is not "colorable." Such merits arguments are not appropriate at this stage. "At this point, we are concerned with who makes the ultimate determination, not what that determination will be." *Ruppel*, 701 F.3d at 1182. And, "[p]reemption is a colorable federal law defense[.]" *Paldrmic v. Altria Corporate Services, Inc.*, 327 F. Supp. 2d 959, 963 (E.D. Wis. 2004). Because the Sheriffs otherwise meet the requirements of the federal officer removal statute and are asserting a federal defense, the Sheriffs are entitled to have that defense resolved by a federal court. *See Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969).

To be sure, the Sheriffs are aware of the various cases cited by Voces below and that the Seventh Circuit has rejected preemption arguments in a similar context. *See McHenry Cty. v. Kwame Raoul*, 44 F.4th 581 (7th Cir. 2022). That the Sheriffs' preemption argument may ultimately fail does not mean the Sheriffs are not entitled to assert a preemption defense and have a federal court decide that defense, especially when the United States continues to make similar preemption arguments in the immigration context. *See generally United States v. Illinois*, 796 F.Supp.3d 494 (N.D. Ill. 2025); *see also USA v. State of Illinois, et al*, Seventh Circuit Dkt. No. 25-2904. And, the U.S. Supreme Court has not resolved the preemptive effect of the federal immigration statutes at issue under these circumstances.

The Sheriffs need not offer a fully developed explanation of their preemption defense at this stage, but this case differs from the various cases on which Voces relied below to argue the merits of a preemption defense. The Wisconsin statute at issue here—Wis. Stat. § 818.01(1)—is not unique. Many other states have similar laws on the books. *See, e.g.*, N.Y. Civ. Rights Law § 23 ("A person shall not be arrested in a civil action or special proceeding, except as prescribed by statute. The writ of ne exeat is abolished."); S.C. Code Ann. § 15-17-10 ("No person shall be arrested in a civil action except as prescribed by this Code. But this shall not apply to proceedings for contempt."); Cal. Civ. Proc. Code § 501 ("A person may not be imprisoned in a civil action for debt or tort, whether before or after judgment. Nothing in this section affects any power a court may have to imprison a person who violates a court order."). Both because Wis. Stat. § 818.01(1) is non-specific—it does not address or mention

43

immigration—and because many other states have similar laws, this case is distinguishable from the cases cited below by Voces. As will be explained below, conflict preemption is a colorable federal defense to Voces' claims here.

8 U.S.C. § 1357(g)(1) provides that:

> the Attorney General may enter into a written agreement with a State, or any political subdivision of a State, pursuant to which an officer or employee of the State or subdivision, who is determined by the Attorney General to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States (including the transportation of such aliens across State lines to detention centers), may carry out such function at the expense of the State or political subdivision *and to the extent consistent with State and local law*.

(emphasis added). This is the language that the Wisconsin Supreme Court ordered the parties to "pay[] particular attention to" when discussing "[w]hat impact, if any, . . . a sheriff's entry into a formal agreement with the federal government" had on Petitioner's question of whether "Wisconsin law enforcement officers [may] deprive a person of liberty after all state law bases for custody have ended, solely on the basis of a federal immigration detainer[.]" (ECF 1-2, pp. 9, 94.)

Voces correctly noted below that "federal law does not and cannot prevent states from deciding whether their own officers participate in immigration enforcement." (ECF 12, p. 25.) However, unlike states such as Illinois that have enacted laws expressly "barring state and local law enforcement agencies from contracting to house or detain individuals for federal civil immigration violations," Wisconsin has decided no such thing. (ECF 12, p. 25) (discussing *McHenry Cnty. v. Raoul*, 44 F.4th 581, 591 (7th Cir. 2022)).

"[I]n those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. Such a conflict occurs . . . because the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). The constellation of federal immigration laws "evince[] a clear invitation from Congress for state and local agencies to participate in the process of enforcing federal immigration laws." *United States v. Vasquez-Alvarez*, 176 F.3d 1294, 1300 (10th Cir. 1999). Despite the fact that 8 U.S.C. § 1357(g)(1) expressly provides that state cooperation may only be carried out "to the extent consistent with State and local law," Wis. Stat. § 818.01(1)—or at least Voces' interpretation of it—is preempted by federal law because reading the prohibition of civil arrests (or even an absence of express authority under state law) to prohibit cooperation with ICE would effectively hamstring the ability of any state's law enforcement officers to cooperate with ICE which would stand as a clear "obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]"

Federal deference to state law does not remove conflict preemption as a colorable defense to Voces' claims. For example, "in defining categories excluded from federal bankruptcy protection, courts are to look to the law of the state of incorporation of the entity in question." *Matter of Est. of Medcare HMO*, 998 F.2d 436, 440 (7th Cir. 1993). Therefore, courts "look primarily to state law for the meaning of '[specific business entities]' rather than to attempt a federal definition by developing

45

a federal common law around the very general language of the Code." *Id.* at 442. "However, after determining the nature of the entity under state law, a court must nonetheless ensure that the classification would not 'frustrate[ ] the full effectiveness [of the Code].'" *Id.* (quoting *Perez v. Campbell*, 402 U.S. 637, 652 (1971)). This is because "state law [is] pre-empted if it 'stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]"'" *Id.* (discussing 479 U.S. at 281). "Thus, courts applying state law have not followed the state classification blindly, but have reviewed the characteristics of the entity to ensure that the state classification is consistent with congressional intent." *Id.*

In the same vein, federal courts should be sensitive to conflict preemption concerns when applying state laws that arguably implicate, but do not expressly address, state and local cooperation with ICE under 8 U.S.C. § 1357(g)(1). Voces' proposed interpretation of Wis. Stat. § 818.01(1) and, by extension, every other state statute that addresses arrests in civil actions generally, "stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" 479 U.S. at 281. This is so because it would prevent state and local law enforcement from cooperating with ICE even in states that had not considered, and expressly prohibited, such cooperation.

Moreover, the Sheriffs note that the United States, in *United States v. Illinois*, is currently litigating the question of whether a state law that prohibits state and local law enforcement officers from complying with an immigration detainer or civil immigration warrant is preempted by the Immigration and Nationality Act. In a brief

46

filed with this Court, for example, the United States argued that such a law is preempted because it undermines "a comprehensive, cooperative scheme governing the regulation of aliens who may be of interest both to states under their criminal laws and to the federal government under the immigration laws." *See* Brief for Plaintiff-Appellant at 20-21, *United States v. Illinois*, No. 25-2904 (7th Cir. Jan. 22, 2026). The United States argues that under the laws at issue in that case "state and local officials will not transfer custody to Congress unless the federal government obtains a judicial warrant that Congress did not require." *Id.* at 33 (citing 8 U.S.C. § 1226(a)). The United States continues:

> Thus, even when federal officials follow the procedures that Congress laid out and acquire administrative warrants, state and local officials will *still* release aliens, forcing federal officials to track down those individuals and effectuate an arrest on the street, needlessly endangering the alien, federal officers, and the public…Moreover, in some circumstances, federal officers may not be able to locate the alien, and thus may be entirely unable to effectuate the detention and removal that Congress has authorized and, in many circumstances, mandated.

*Id.* at 33-34. The United States further argues that denying the validity of administrative warrants creates an obstacle to the full purposes and objectives of Congress. *Id.* at 34.

Voces' claims here, which include the claim that when Sheriffs honor ICE detainers and administrative warrants they are violating state laws that Voces claims require a judicial order of arrest, *see* (ECF 1-2, pp. 26-27), implicate similar concerns and lead to similar preemption arguments. Surely, a preemption defense under these circumstances is colorable if the United States is currently making

47

similar preemption arguments in other cases. The Sheriffs are entitled to litigate their federal defense in federal court under federal officer removal.

## CONCLUSION

For all of the foregoing reasons, the district court decision remanding this case to the Wisconsin Supreme Court should be reversed.

Dated this 5th day of August, 2026

Attorneys for Respondents-Appellants Dave Gerber, Sheriff of Walworth County, Todd Delain, Sheriff of Brown County, Chad Billeb, Sheriff of Marathon County and David Zoerner, Sheriff of Kenosha County

By: *s/ Molly K. Woodford*
SAMUEL C. HALL, JR.
State Bar No.: 1045476
MOLLY K. WOODFORD
State Bar No.: 1126884
CRIVELLO, NICHOLS & HALL, S.C.
710 N. Plankinton Ave., Suite 500
Milwaukee, WI 53203
Phone:414.271.7722
Fax:   414.271.4438
Email:      shall@crivellolaw.com
            mwoodford@crivellolaw.com

Attorneys for Respondent-Appellant, Sheriff Chip Meister

By:*/s/ Matthew J. Thome*
ANDREW T. PHILLIPS
State Bar No.: 1022232
MATTHEW J. THOME
State Bar No.: 11113463
ATTOLLES LAW, S.C.
222 E. Erie St. Ste. 210
Milwaukee, WI 53202
Phone: 414.285.0825

48

Email: aphillips@attolles.com
mthome@attolles.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) as modified by Circuit Rule 32(c) because this brief contains 13,299 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

Dated this 5th day of August, 2026.

*/s/Molly K. Woodford*
Molly K. Woodford
Counsel for Respondents-Appellants Dave Gerber, Sheriff of Walworth County, Todd Delain, Sheriff of Brown County, Chad Billeb, Sheriff of Marathon County and David Zoerner, Sheriff of Kenosha County

## CIRCUIT RULE 30(D) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required

by Circuit Rule 30(a) and (b) are included in the Appendix.

Dated this 5th day of August, 2026.

*/s/Molly K. Woodford*
Molly K. Woodford
Counsel for Respondents-Appellants Dave Gerber, Sheriff of Walworth County, Todd Delain, Sheriff of Brown County, Chad Billeb, Sheriff of Marathon County and David Zoerner, Sheriff of Kenosha County

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of August, 2026, I filed the foregoing Brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated this 5th day of August, 2026.

*/s/Molly K. Woodford*
Molly K. Woodford
Counsel for Respondents-Appellants Dave Gerber, Sheriff of Walworth County, Todd Delain, Sheriff of Brown County, Chad Billeb, Sheriff of Marathon County and David Zoerner, Sheriff of Kenosha County

# APPENDIX

# TABLE OF CONTENTS

Opinion and Order of the Honorable William C. Conley dated May 25, 2026    A-1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VOCES DE LA FRONTERA, INC.,

Petitioner,

v.                                                           OPINION and ORDER

DAVE GERBER, TODD DELAIN, CHAD BILLEB,                        25-cv-1070-wmc
DAVID ZOERNER and CHIP MEISTER,

Respondents.

---

Voces de la Frontera, Inc. commenced this lawsuit by directly petitioning the Wisconsin Supreme Court to exercise original jurisdiction over a challenge to the lawfulness of arrests being made by Wisconsin sheriffs under federal immigration detainers. More specifically, petitioner claims that a Wisconsin sheriff's legal authority to make any arrest for what it characterizes as a "civil" immigration violation is prohibited under Wis. Stat. § 818. After the Wisconsin Supreme Court agreed to hear the case, however, five Wisconsin sheriffs named as respondents removed the case to federal court under 28 U.S.C. §§ 1441 and 1446. Petitioner now asks this court to remand the case under 28 U.S.C. § 1447(c), arguing that respondents' removal was untimely. (Dkt. #11.) Because the court agrees, this lawsuit will be remanded back to the Wisconsin Supreme Court.

OPINION

Petitioner argues for remand on the grounds that: (1) respondents removed the case after the deadline established by § 1446(b); and (2) this court lacks jurisdiction over the lawsuit

A-1

because it presents no federal question and the respondent sheriffs are not federal actors.  This

court begins and ends its discussion with timeliness, which is dispositive.[1]

The federal removal statute states that "any civil action brought in a State court of

which the district courts of the United States have original jurisdiction, may be removed by

the defendant or the defendants."  28 U.S.C. § 1441(a).  In other words, an action is removable

if it originally could have been brought in federal court.  As for timing, the notice of removal

of a civil action or proceeding must

> be filed within 30 days after the receipt by the defendant, through
> service or otherwise, of a copy of the initial pleading setting forth
> the claim for relief upon which such action or proceeding is based,
> or within 30 days after the service of summons upon the
> defendant if such initial pleading has then been filed in court and
> is not required to be served on the defendant, whichever period is
> shorter.

28 U.S.C. § 1446(b)(1).

Generally, therefore, a defendant has 30 days after receiving the complaint to remove

an action from state to federal court.  Here, however, petitioner did not initiate suit by filing a

complaint.  Instead, on September 18, 2025, Voces de la Frontera filed a petition in the

Wisconsin Supreme Court asking it to exercise jurisdiction as an original action.  (Petition (dkt.

#1-2).)  Voces de la Frontera contends that this petition was the "initial pleading setting forth

the claim for relief upon which such action or proceeding is based," which triggered the

beginning of the 30-day period to file a notice of removal.  In contrast, respondents argue that

---

[1] Although timeliness of removal is not a jurisdictional question, the court can consider
timeliness before subject matter jurisdiction under these circumstances.  *See Sinochem Int'l Co.
v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to
choose among threshold grounds for denying audience to a case," because "jurisdiction is vital
only if the court proposes to issue a judgment on the merits.") (citation and quotation marks
omitted).

2

the petition cannot be a "pleading" for purposes of § 1446(b)(1) it is simply asking the court to exercise original jurisdiction, and that until that court grants the petition, the underlying legal issues are not considered at all.    Unfortunately, the parties found no case law addressing whether a petition to a state supreme court seeking its exercise of original jurisdiction qualifies as an "initial pleading" for purposes of § 1446(b)(1), nor has this court.  Still, for the reasons explained below, petitioner has by far the more persuasive argument.

To begin, the Wisconsin Supreme Court generally treats a petition for leave to commence an original action as the operative complaint in original proceedings.  *See, e.g., Labor and Farm Party v. Elections Bd., State of Wis.*, 117 Wis. 2d 351, 352 n.1, 344 N.W.2d 177, 178 (1984) (per curiam) (concluding the petition and denials contained in the response to the petition constitute the complaint and answer); *State ex rel. Sonneborn v. Sylvester*, 25 Wis. 2d 177, 130 N.W.2d 569 (1964) (per curiam) (explaining that "the petition, already served, should constitute the complaint," and that "personal jurisdiction was supplied" by service of petition and order to show cause), *overruled on other grounds by Pavalon v. Thomas Holmes Corp.*, 25 Wis. 2d 540, 131 N.W.2d 331 (1964); *cf. Jefferson v. Dane Cnty.*, 2020 WI 90, ¶ 9, 394 Wis. 2d 602, 610, 951 N.W.2d 556, 560 (Wisconsin Supreme Court granting preliminary injunctive relief based on petition *before* issuing order accepting original jurisdiction over case).

As respondents note, there is a contrary, historic authority suggesting that a petition seeking leave to institute an original action in the Wisconsin Supreme Court was not viewed as commencing an action.  *See In re Exercise of Original Jurisdiction of Supreme Court*, 201 Wis. 123, 229 N.W. 643 (1930) (per curiam) (clarifying the limits on original jurisdiction and procedures for habeas corpus actions in the Wisconsin Supreme Court).  The Wisconsin Supreme Court previously indicated that a party seeking to institute an original action should

3

file a petition, which should be served upon the opposite party along with notice of when and where the petitioner will apply for leave of court to institute the action. *Id.* 229 N.W. at 645. If leave was granted, "the complaint in the action should then be served upon the opposite party and the case proceed regularly according to the established rules of the court."[2] *Id.* However, even under that historic approach, the court recognized that, "an order to show cause upon the merits will not be granted in the first instance because that amounts to the commencement of an action." *Id.*

Regardless, in this and other, more recent cases, no other document was required to "commence the action" in the Wisconsin Supreme Court or act as an "initial pleading," likely because the petition itself has, as in this case, all the typical components of a complaint, including: a caption; a description of the parties; a statement of facts; a statement of petitioner's legal interest; a statement of law; the pleading of two causes of action under Wisconsin's uniform declaratory judgments act; and a statement of relief sought. Additionally, the petition was served on respondents on September 18, 2025 -- the same day it was filed -- prompting the Wisconsin Supreme Court to issue a letter to petitioner and respondents the very next day

---

[2] Respondents also reference a comment made by the Wisconsin Supreme Court in *Jensen v. Wisconsin Elections Bd.*, 2002 WI 13, ¶ 9, 249 Wis. 2d 706, 639 N.W.2d 537, about another action filed under its original jurisdiction, which was then swiftly removed to federal court. *Id.* ("In 1982, this court granted a petition for leave to commence an original action in the matter of legislative redistricting, but its jurisdiction was brief and inconsequential: the case was promptly removed to federal court in Milwaukee and consolidated with a redistricting lawsuit already pending there.") (discussing *Wisconsin State AFL–CIO v. Elections Bd.*, 543 F. Supp. 630, 632-33 (E.D. Wis. 1982)). Respondents argue that this comment suggests that the proper time to remove an original action is after the Wisconsin Supreme Court has accepted jurisdiction, while conceding that timeliness of removal was nowhere addressed in *Jensen*; nor was timeliness of removal a factor in the *Wisconsin State AFL–CIO* decision referenced in *Jensen*.

that acknowledged receipt and which directed that a response be filed to the petition.  (Dkt. #12-3.)

On October 7, 2025, respondents then filed their formal, joint response in opposition to the petition, arguing not only against the court exercising jurisdiction over the action, but also addressing the merits and arguing that Wisconsin sheriffs have the power to honor immigration detainers under Wisconsin constitutional, statutory, and common law, as well as agreements with U.S. Immigration and Customs Enforcement ("ICE") under 25 U.S.C. § 287(g).  (Dkt. #1-2, Ex. A. at 58–65.)  In other words, the response was equivalent to an answer *and* a motion to dismiss, as it raised multiple defenses, addressed both procedural and substantive questions, and urged dismissal of the lawsuit on the merits.  Thus, when the Wisconsin Supreme Court issued its order on December 3, 2025, granting the petition for leave to commence an original action, the court did not require petitioner or respondents to file any additional pleadings, instead setting a briefing schedule on the merits of petitioner's claims.  (*Id.* at 93.)  As a result, aside from the original petition, there is no other "initial pleading" that would trigger the removal period in § 1446(b)(1).

Assuming the original petition could be an "initial pleading," respondents alternatively argue that the petition only became an "initial pleading" for purposes of § 1446(b)(1) after the Wisconsin Supreme Court agreed to exercise jurisdiction over the original action on December 3, 2025, and issued its order setting a briefing schedule, because respondents did not know until then that there were controlling issues of federal law that could be removed to federal court.  Specifically, respondents point to that court's instructions to the parties to address federal issues raised in the sheriffs' response, relating to federal statutes and § 287(g) agreements with ICE, in addition to the merits of the issues presented in the original petition.

5

Certainly, "[t]he 30-day removal clock does not begin to run until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013). However, respondents' claimed uncertainty as to the federal legal issues presented by the petition only after briefing on the merits was set is undermined by their earlier response to the petition, which raised the *very same* federal statutory arguments on which they now base their claims to federal subject matter jurisdiction, including the existence of § 287(g) agreements between ICE and sheriffs and empowerment of state officials under 8 U.S.C. § 1357(g). Indeed, the Wisconsin Supreme Court included those issues in its briefing order *because* respondents raised them.

Finally, respondents cite *no* authority for the argument that their success or lack of success in opposing the petition should be what triggered the time to remove, perhaps because the law is completely to the contrary: because respondents believed there was a basis for federal jurisdiction, they were obligated not to sit on their hands and see if the Wisconsin Supreme Court would reject the petition. *See Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 188 (4th Cir. 2017) ("[A] defendant must not be allowed to test the waters in state court [by filing a demurrer] and, finding the temperature not to its liking, beat a swift retreat to federal court. Such behavior falls within the very definition of forum-shopping and is antithetical to federal-state court comity.") (alteration in original) (quoting *Estate of Krasnow v. Texaco, Inc.*, 773 F. Supp. 806, 809 (E.D. Va. 1991).) Just so here: because respondents waited to file their notice of removal some 103 days after service of the petition -- well outside the 30 days permitted under § 1446 *and* only after learning that the Wisconsin Supreme Court

6

found the petition's merits worthy of consideration -- respondents' notice of removal was untimely, and this case must be remanded to that court.

ORDER

IT IS ORDERED that plaintiff Voces de la Fronter's motion to remand (dkt. #11), is GRANTED.  This case is REMANDED to the Wisconsin Supreme Court.

Entered this 15th day of May, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

7

A-7