[Oral Argument Not Yet Scheduled]

**No. 26-2129**

**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

VOCES DE LA FRONTERA, INC.,

*Petitioner–Appellee*,

v.

DAVE GERBER, Walworth County Sheriff, et al.,

*Respondents-Appellants.*

Appeal from the United States
District Court for the Western District of Wisconsin
No. 3:25-cv-01070-wmc
Hon. William M. Conley

# BRIEF OF PETITIONER-APPELLEE

R. Timothy Muth
2010 N. Fratney St.
Milwaukee, WI 53212
Tel.:414-588-5151

Hannah R. Schwarz
Ryan V. Cox
ACLU OF WISCONSIN FOUNDATION
207 E Buffalo St.
Suite 325
Milwaukee, WI 53202
Tel.: 414-272-4032
*Counsel for Petitioner-Appellee*

Save As Clear Form



**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26 2129

Short Caption: Voces de la Frontera, Inc. v. Gerber, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Voces de la Frontera, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
ACLU of Wisconsin Foundation

Christopher & De León

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

n/a

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

---

Attorney's Signature: /s/ Hannah R. Schwarz Date: 06/08/2026

Attorney's Printed Name: Hannah R. Schwarz

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 207 E Buffalo St., Suite 325

Milwaukee, WI 53202

Phone Number: 414 272 4032 X223 Fax Number: 414 272 0182

E-Mail Address: hschwarz@aclu wi.org

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-2129

Short Caption: Voces de la Frontera, Inc. v. Gerber

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Voces de la Frontera, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
ACLU of Wisconsin Foundation

Christopher & DeLeon

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: /s R. Timothy Muth Date: 9/4/2026

Attorney's Printed Name: R. Timothy Muth

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: NEW: 2010 N. Fratney St.

Milwaukee, WI 53212

Phone Number: NEW: 414-588-5151 Fax Number:

E-Mail Address: NEW: tim.muth@wi-immigration.com

Save As Clear Form



## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-2129

Short Caption: Voces de la Frontera, Inc. v. Gerber

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Voces de la Frontera, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
ACLU of Wisconsin Foundation

Christopher & De León Law Office

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

n/a

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

---

Attorney's Signature: /s/ Ryan V. Cox Date: 06/04/2026

Attorney's Printed Name: Ryan V. Cox

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 207 E. Buffalo St., Suite 325

Milwaukee, WI 53202

Phone Number: 414-272-4032 Fax Number: 414-272-0182

E-Mail Address: rcox@aclu-wi.org

## CORPORATE DISCLOSURE STATEMENT

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS


JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ........ 1

STATEMENT OF THE CASE ........ 2

I. Voces' Petition asks the Wisconsin Supreme Court for a declaratory judgment and injunction under Wisconsin law. ........ 3

II. The Sheriffs file a Response, and the Wisconsin Supreme Court orders briefing on the merits. ........ 5

III. The District Court remands this case to state court. ........ 6

SUMMARY OF THE ARGUMENT ........ 8

ARGUMENT ........ 11

I. The District Court correctly ruled that the Sheriffs failed to timely file their Notice of Removal. ........ 11

A. Section 1446(b) sets a strict 30-day limit for removal following service of an initial pleading. ........ 11

B. Voces' Petition before the Wisconsin Supreme Court was an "initial pleading" triggering the 30-day period for removal. ........ 13

C. The Sheriffs should not be allowed to profit from waiting to see how the Wisconsin Supreme Court would rule on their opposition to the Petition before removing. ........ 20

II. The Sheriffs cannot remove under 28 U.S.C. § 1441 because their alleged "federal issues" are either state-law issues or federal defenses ........ 23

A. Whether Section 1357(g) grants Wisconsin law enforcement the ability to honor detainers absent a state prohibition on doing so assumes the very interpretation of state law that Voces rejects and is therefore neither raised nor disputed. ........ 25

B. Whether Section 1357(g) nonetheless grants Wisconsin law enforcement the ability to honor detainers because implied prohibitions do not have the same effect as explicit prohibitions again assumes an interpretation of state law that Voces rejects and is therefore neither raised nor disputed. ....27

C. Whether Section 1357(g) grants Wisconsin law enforcement the ability to honor detainers, despite a state prohibition on doing so, is an issue of federal preemption, and therefore cannot trigger federal-issue removal. ....28

D. There is no material disagreement between the parties that requires this Court to interpret a provision of Section 1357(g), and the Sheriffs' attempts to put that provision at issue is mere distraction. ....30

E. Even if the Sheriffs' "federal issues" were necessarily raised or actually disputed, the Sheriffs have failed to show that these issues are "substantial" or "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." ....32

III. The Sheriffs cannot remove under 28 U.S.C. § 1442 because their decision to honor detainers is not made while "acting under" federal officials and their preemption defense is not colorable. ....33

A. The Sheriffs are not "acting under" federal officials when they make a decision that is wholly within their discretion. ....34

B. The Sheriffs have no "colorable" preemption defense because the Supreme Court and this Court have already rejected their preemption arguments. ....39

1. Because federal law has preemptive effect only on state statutes that regulate private actors, there is no colorable argument that 8 U.S.C. §§ 1357(g)(1) and (10)—which do not even mention private actors—can preempt Wis. Stat. § 818.01. ....40

2. Even without *Murphy*, the Sheriffs can present no colorable federal preemption defense because they have no viable argument that § 1357(g) and Wisconsin law conflict. ....................43

3. Because Wisconsin's refusal to assist federal immigration officials does not impede them, the Sheriffs have no colorable obstacle preemption argument. ....................49

IV. If this Court finds that the Sheriffs are state officials and have not waived Eleventh Amendment immunity, the *Pennhurst* doctrine precludes the District Court from granting relief, and thus remand to the Supreme Court, which can grant that relief, is required under *Wisconsin Department of Corrections v. Schacht* ....................51

CONCLUSION ....................56

CERTIFICATE OF COMPLIANCE ....................58

CERTIFICATE OF SERVICE ....................59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Piechowski*,
13 F. Supp. 2d 870 (E.D. Wis. 1998) ....................52, 53

*Att'y Gen. of N.J. v. Dow Chem. Co.*,
140 F.4th 115 (3d Cir. 2025)....................35

*Baker v. Atl. Richfield Co.*,
962 F.3d 937 (7th Cir. 2020).................... 35, 36, 38, 39

*Barnett Bank of Marion Cnty., N.A. v. Nelson*,
517 U.S. 25 (1996) ....................29

*Betzner v. Boeing Co.*,
910 F.3d 1010 (7th Cir. 2018)....................36

*Boyd v. Phoenix Funding Corp.*,
366 F.3d 524 (7th Cir. 2004)....................11

*BP p.l.c. v. Mayor & City Council of Balt.*,
593 U.S. 230 (2021) ....................11, 12

*Castillo v. Snyders*,
497 F. Supp. 3d 299 (N.D. Ill. 2020)....................38

*Chevron U.S.A. Inc. v. Plaquemines Parish*,
608 U.S. ___, 146 S. Ct. 1052 (2026) ....................34

*City & Cnty. of S.F. v. Barr*,
965 F.3d 753 (9th Cir. 2020)....................42

*City & Cnty. of S.F. v. Garland*,
42 F.4th 1078 (9th Cir. 2022) ....................42

*City & Cnty. of S.F. v. Sessions*,
349 F. Supp. 3d 924 (N.D. Cal. 2018)....................42

*City & Cnty. of S.F. v. Trump*,
897 F.3d 1225 (9th Cir. 2018)....................37

*City of Chicago v. Sessions*,
888 F.3d 272 (7th Cir. 2018)....................50

*City of El Cenizo v. Texas*,
890 F.3d 164 (5th Cir. 2018)....................45

*Colorado v. U.S. Dep't of Justice*,
455 F. Supp. 3d 1034 (D. Colo. 2020) ....................43

*Dean Foods Co. v. Brancel*,
187 F.3d 609 (7th Cir. 1999)....................51

*Doe v. Allied-Signal, Inc.*,
985 F.2d 908 (7th Cir. 1993)....................23

*Enbridge Energy, LP v. Nessel*,
608 U.S. 67, 146 S. Ct. 1074 (2026)....................11

*Esparza v. Nobles County*,
No. A18-2011, 2019 WL 4594512
(Minn. Ct. App. Sept. 23, 2019)....................5

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) ....................29

*Galarza v. Szalczyk*,
745 F.3d 634 (3d Cir. 2014) ....................37

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) .................... 24, 32, 33

*Gunn v. Minton*,
568 U.S. 251 (2013) .................... 24, 26, 32

*Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*,
756 F.3d 1032 (7th Cir. 2014)....................23, 24

*Home Depot U.S.A., Inc. v. Jackson*,
587 U.S. 435 (2019) ....................17, 18

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*,
778 F.3d 593 (7th Cir. 2015)....................1

*In re Exercise of Original Jurisdiction of Supreme Court*,
201 Wis. 123, 229 N.W. 643 (1930) ....................14

*Ind. Right to Life Victory Fund v. Morales*,
66 F.4th 625 (7th Cir. 2023) ....................48

*James v. Heinrich*,
2021 WI 58, 397 Wis. 2d 517, 960 N.W.2d 350 .................... 16, 19, 25

*Jefferson v. Dane Cnty.*,
2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556 .................................15

*Labor & Farm Party v. Elections Bd.*,
117 Wis. 2d 351, 344 N.W.2d 177 (1984) (per curiam) ......................16

*Lapides v. Bd. of Regents*,
535 U.S. 613 (2002) .........................................................................53

*Lovern v. Gen. Motors Corp.*,
121 F.3d 160 (4th Cir. 1997)...........................................................21

*Lu Junhong v. Boeing Co.*,
792 F.3d 805 (7th Cir. 2015)...........................................................36

*Lunn v. Commonwealth*,
78 N.E.3d 1143 (Mass. 2017)............................................................5

*Matter of Est. of Medcare HMO*,
998 F.2d 436 (7th Cir. 1993).....................................................44, 47

*McHenry Cnty. v. Raoul*,
44 F.4th 581 (7th Cir. 2022) .................................................. passim

*McHenry Cnty. v. Raoul*,
574 F. Supp. 3d 571 (N.D. Ill. 2021)................................................41

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
584 U.S. 453 (2018) ......................................................... 39, 40, 41, 43

*N. Ill. Gas Co. v. Airco Indus. Gases*,
676 F.2d 270 (7th Cir. 1982)...........................................................11

*Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*,
707 F.3d 883 (7th Cir. 2013)...........................................................29

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
928 F.3d 639 (7th Cir. 2019)...........................................................44

*Nixon v. Mo. Mun. League*,
541 U.S. 125 (2004) ...................................................... 33, 48, 49

*Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*,
865 F.3d 181 (4th Cir. 2017).....................................................20, 21

*Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of N.J.*,
8 F.4th 176 (3d Cir. 2021) .........................................................41, 42

*Oregon v. Trump*,
406 F. Supp. 3d 940 (D. Or. 2019) .......................................................42

*Pavalon v. Thomas Holmes Corp.*,
25 Wis. 2d 540, 131 N.W.2d 331 (1964) ............................................15

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) ................................................................ passim

*People ex rel. Wells v. DeMarco*,
88 N.Y.S.3d 518 (App. Div. 2018) .........................................................5

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
551 U.S. 224 (2007) ................................................................12

*Ramon v. Short*,
460 P.3d 867 (Mont. 2020) ...............................................................5

*Rice v. Panchal*,
65 F.3d 637 (7th Cir. 1995) ...............................................................24

*Ruppel v. CBS Corp.*,
701 F.3d 1176 (7th Cir. 2012) ................................................34, 35, 39

*Schur v. L.A. Weight Loss Ctrs., Inc.*,
577 F.3d 752 (7th Cir. 2009) ..............................................................23

*Soderbeck v. Burnett Cnty.*,
821 F.2d 446 (7th Cir. 1987) ..........................................................52, 53

*State ex rel. Sonneborn v. Sylvester*,
25 Wis. 2d 177, 130 N.W.2d 569 (1964) .......................................14, 15

*Teamsters Local 404 Health Servs. & Ins. Plan v. King Pharms., Inc.*, 906 F.3d 260 (2d Cir. 2018) .........................................18

*Trump v. Wis. Elections Comm'n*,
506 F. Supp. 3d 620 (E.D. Wis. 2020) ................................................51

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) ...........................................43, 45, 47, 50

*United States v. Illinois*,
796 F. Supp. 3d 494 (N.D. Ill. 2025) ..................................................50

*United States v. Uribe-Rios*,
558 F.3d 347 (4th Cir. 2009) ..............................................................37

*Walker v. Trailer Transit, Inc.*,
727 F.3d 819 (7th Cir. 2013)........19

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007)........35, 39

*Wilson v. Intercollegiate (Big Ten) Conf. Athletic Ass'n*,
668 F.2d 962 (7th Cir. 1982)........12

*Wis. Dep't of Corr. v. Schacht*,
524 U.S. 381 (1998)........53, 54, 55

*Wis. Legislature v. Palm*,
2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900........16, 17, 19

*Wis. Prof'l Police Ass'n v. Cnty. of Dane*,
106 Wis. 2d 303, 316 N.W.2d 656 (1982)........52

**Statutes**

8 U.S.C. § 1357........50
8 U.S.C. § 1357(g)........passim
8 U.S.C. § 1357(g)(1)........passim
8 U.S.C. § 1357(g)(9)........45
8 U.S.C. § 1357(g)(10)........passim
8 U.S.C. § 1373........41, 42
8 U.S.C. § 1644........41
28 U.S.C. § 1441........passim
28 U.S.C. § 1442........passim
28 U.S.C. § 1442(a)........34
28 U.S.C. § 1442(a)(1)........38
28 U.S.C. § 1446(b)........passim
28 U.S.C. § 1446(b)(1)........passim
Wis. Stat. § 809.70........2, 6
Wis. Stat. § 809.70(1)........9
Wis. Stat. § 809.70(3)........14
Wis. Stat. § 818.01........passim
Wis. Stat. § 818.02........4
Wis. Stat. § 818.03........4

Wis. Stat. § 818.04 .......... 4
Wis. Stat. § 968.07(1) .......... 4
Wis. Stat. §§ 968.07(1)(a)–(c) .......... 4
Wis. Stat. § 968.07(1)(d) .......... 4

**Constitutional Provisions**

U.S. Const. amend. X .......... 37, 50
U.S. Const. amend. XI .......... passim

## JURISDICTIONAL STATEMENT

The jurisdictional summary provided in Appellants' brief is complete and correct.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Voces does not agree that issues numbered 2–4 in Appellants' Joint Brief are properly before this Court for review. The District Court ruled solely that the Appellants (hereinafter, "the Sheriffs") had failed to timely file for removal of this action. The District Court did not decide whether the Sheriffs are entitled to remove under 28 U.S.C. § 1441 or 1442 (federal-issue and federal-officer removal, respectively) or whether the *Pennhurst* doctrine bars this case from proceeding in federal court. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund,* 778 F.3d 593, 607 (7th Cir. 2015) ("[C]onsistent with our role as a reviewing court, we choose to leave the merits of that question to the district court in the first instance."). For that reason, this appeal presents just one question: Did the Sheriffs timely remove this case from the Wisconsin Supreme Court to federal district court, pursuant to 28 U.S.C. § 1446(b)(1)?

## STATEMENT OF THE CASE

This action challenges five Wisconsin sheriffs' practice of honoring immigration detainers in violation of state law. For up to forty-eight hours, the Sheriffs detain individuals whose state-law basis for detention has already expired. The Sheriffs do this because federal Immigration and Customs Enforcement ("ICE") asks them to, though complying with these requests is voluntary. The Wisconsin Supreme Court accepted original jurisdiction over this case, pursuant to Wis. Stat. § 809.70. The Sheriffs attempted to remove the case to federal court, the District Court remanded it, and this appeal followed.

Petitioner-Appellee Voces de la Frontera, Inc. ("Voces") is a membership-based Wisconsin nonprofit corporation headquartered in Milwaukee and led by low-wage workers, immigrants, and youth. Voces' mission is to protect and expand civil rights and workers' rights through leadership development, community organizing, and empowerment.

Voces' membership includes Wisconsin residents with a wide variety of immigration statuses, from U.S. citizens to legal permanent residents (green card holders) to Deferred Action for Childhood Arrivals (DACA) recipients to undocumented individuals in various stages of

obtaining legal immigration status. These members have expressed their ongoing fear and concern that any contact with the Wisconsin criminal legal system may result in local law enforcement turning them over to ICE. Indeed, Voces' members and their family members have been held on immigration detainers in Wisconsin county jails in the past, and members continue to risk being illegally deprived of their liberty as a result of such detainers.

Respondents-Appellants are the Sheriffs for five Wisconsin counties who have elected to continue to hold persons in custody on the basis of ICE detainers.

## I. Voces' Petition asks the Wisconsin Supreme Court for a declaratory judgment and injunction under Wisconsin law.

Voces' Petition for an Original Action, filed September 18, 2025, in the Wisconsin Supreme Court (hereinafter, the "Petition"[1]) presents an unsettled question of Wisconsin law. Voces alleges that Wisconsin law bars Wisconsin Sheriffs from keeping people in custody on ICE detainers

[1] The Petition is included in the District Court docket as an exhibit to the Sheriffs' Joint Notice of Removal. *See Voces de la Frontera, Inc. v. Gerber*, 3:25-cv-01070-wmc (W.D. Wis. 2025), Dkt. 1-2, at 3. All docket references are to the District Court docket, unless otherwise indicated.

once all Wisconsin state law bases for custody have ended. Voces sought a declaratory judgment on this matter of state law and injunctive relief barring the Sheriffs from violating state law. Specifically, Voces asked for a declaratory judgment that:

a. Civil immigration violations are not one of the enumerated offenses **in Wis. Stat. § 818.02**.

b. DHS Form I-200 (ICE's so-called "administrative warrant") is not an order of arrest "obtained from the court in which the action is brought or a judge" **under Wis. Stat. § 818.03**.

c. DHS Form I-200 does not contain an "affidavit demonstrating that a cause of action exists" **under Wis. Stat. § 818.04**.

d. DHS Form I-200 is not a "warrant" **under Wis. Stat.** §§ **968.07(1)(a)-(c).**

e. A civil immigration violation is not a crime **under Wis. Stat. § 968.07(1)(d)**.

f. A Wisconsin law enforcement officer **violates Wis. Stat. §§ 818.01–818.04** when they hold a person pursuant to an ICE detainer after that person is otherwise entitled to release under state law.

g. A Wisconsin law enforcement officer acts outside of their authority **under Wis. Stat. § 968.07(1)** when they hold a person pursuant to an ICE detainer after that person is otherwise entitled to release under state law.

Dkt. 1-2, Petition, at 27–28 (emphases added).

Voces' claims that the Sheriffs are violating state law arise under state law only, not federal law. As stated in the introduction to the Petition, "This Court can and should resolve this issue by granting this petition for an original action and declaring that Wisconsin sheriffs lack the authority under state law to hold persons in custody past their release date pursuant to ICE detainers." Dkt. 1-2, Petition, at 10. Indeed, multiple state courts around the country have addressed similar claims in recent years, applying their own states' laws to review the conduct of state officers. *See Lunn v. Commonwealth*, 78 N.E.3d 1143 (Mass. 2017); *People ex rel. Wells v. DeMarco*, 88 N.Y.S.3d 518 (App. Div. 2018); *Ramon v. Short*, 460 P.3d 867 (Mont. 2020); *Esparza v. Nobles Cnty.*, No. A18-2011, 2019 WL 4594512 (Minn. Ct. App. Sept. 23, 2019).

## II. The Sheriffs file a Response, and the Wisconsin Supreme Court orders briefing on the merits.

On September 23, 2025, the Supreme Court ordered the Sheriffs to file a response to the Petition by October 7, 2025. Dkt. 12, at 34–36. Their 33-page responsive pleading asserted that the Sheriffs have the power under Wisconsin constitutional, statutory, and common law to honor immigration detainers. Dkt. 1-2, at 38 (hereinafter, the "Response"). In a section entitled "The Petition Skirts the Issues Raised by 287(g)

Agreements," the Sheriffs included three pages of argument on the issues they now claim entitled them to remove the case to federal district court. *Id.* at 65–67.

On December 3, 2025, 77 days after the Petition was filed and the Sheriffs were served, the Supreme Court of Wisconsin granted the Petition. *Id.* at 93–94. The Court did not require any additional pleadings and set a briefing schedule on the merits, instructing the parties to address three issues from the Response, as well as the issue presented in Voces' original petition.

On December 30, 2025, 104 days after Voces had filed its Petition and three days before Voces' opening merits brief was due, the Sheriffs filed their Notice of Removal, removing the case to the Western District of Wisconsin. Dkt. 1. Voces filed a motion to remand the action on January 26, 2026. Dkt. 11.

## III. The Sheriffs remove, Voces moves to remand, and the District Court remands this case to state court.

The District Court granted the motion to remand on the basis that the Sheriffs had failed to comply with the 30-day removal deadline required by 28 U.S.C. § 1446(b). Dkt. 23. After reviewing Wisconsin Supreme Court opinions involving original actions under Wis. Stat.

§ 809.70, the District Court found that "the Wisconsin Supreme Court generally treats a petition for leave to commence an original action as the operative complaint in original proceedings." *Id.* at 3. The District Court noted that:

> [I]n this and other, more recent cases, no other document was required to "commence the action" in the Wisconsin Supreme Court or act as an "initial pleading," likely because the petition itself has, as in this case, all the typical components of a complaint, including: a caption; a description of the parties; a statement of facts; a statement of petitioner's legal interest; a statement of law; the pleading of two causes of action under Wisconsin's uniform declaratory judgments act; and a statement of relief sought.

*Id.* at 4. The District Court also found that:

> [T]he response [to the Petition] was equivalent to an answer *and* a motion to dismiss, as it raised multiple defenses, addressed both procedural and substantive questions, and urged dismissal of the lawsuit on the merits.

*Id*. at 5.

After reviewing the pleadings filed at the Wisconsin Supreme Court, the District Court concluded that "aside from the original petition, there is no other 'initial pleading' that would trigger the removal period in § 1446(b)(1)." *Id.* The Petition contained all the necessary information from which the Sheriffs could ascertain their claimed bases for removal:

> [R]espondents' claimed uncertainty as to the federal legal issues presented by the petition only after briefing on the merits was set is undermined by their earlier response to the petition, which raised the *very same* federal statutory arguments on which they now base their claims to federal subject matter jurisdiction

*Id*. at 6.

The District Court found this was not a close case, noting, "[P]etitioner has *by far the more persuasive argument*." *Id.* at 3 (emphasis added). The Court went on to say, "[R]espondents cite *no* authority for the argument that their success or lack of success in opposing the petition should be what triggered the time to remove, perhaps because the law is completely to the contrary." *Id*. at 6.

Finding the timeliness issue dispositive, the District Court did not address the availability of removal jurisdiction for this matter under 28 U.S.C. § 1441 or 1442 or whether removal was improper in light of *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984). *Id*. at 2.

## SUMMARY OF THE ARGUMENT

The District Court correctly found that the Sheriffs failed to remove this action on time. The "initial pleading" before the Wisconsin Supreme

Court is the Petition for Original Action. A Petition for Original Action must contain a statement of facts, causes of action, a prayer for relief, and a description of the bases for the court's jurisdiction. *See* Wis. Stat. § 809.70(1). Voces' Petition provided the notice required by 28 U.S.C. § 1446(b)(1) and began the 30-day period for removal, with which the Sheriffs did not comply. The Sheriffs did not need to wait for the Wisconsin Supreme Court to rule on its jurisdiction, and any alleged bases for removal were present and known to the Sheriffs when they were served with the Petition and were not the result of subsequent action by the Wisconsin Supreme Court. *See infra* Section I.

Even if timely filed, this case would not be removable. It is not removable under 28 U.S.C. § 1441 because it pleads no cause of action arising under federal law. The only "federal issues" the Sheriffs raise are state-law issues or affirmative defenses, which cannot create a basis for removal. *See infra* Section II.

Nor are the Sheriffs entitled to removal under 28 U.S.C. § 1442. They are not "federal officers" because they are not acting under the control of the federal government when they decide whether or not to honor detainers, nor do they have the required "colorable federal defense"

required by the statute because their exact pre-emption arguments have been rejected by this Circuit and around the country. *See infra* Section III.

Finally, even if this case was timely removed and even if the Sheriffs have raised a federal issue or are federal officers for purposes of removal, removal would likely be improper for another reason. If the Sheriffs are state officers and have not waived their right to assert Eleventh Amendment immunity by removing, *Pennhurst State School and Hospital v. Halderman* would prohibit a federal court from requiring the Sheriffs to comply with their obligations under state law. And where *Pennhurst* bars relief against a state after it has removed to federal court, there is no removal jurisdiction, and the federal court must remand to state court. *See infra* Section IV.

## ARGUMENT

### I. The District Court correctly ruled that the Sheriffs failed to timely file their Notice of Removal.

#### A. Section 1446(b) sets a strict 30-day limit for removal following service of an initial pleading.

Section 1446(b)(1) sets out the requirements for removing an action to federal court, including a requirement that removal happen promptly:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1). The 30-day filing rule "is a strictly applied rule of procedure and untimeliness is a ground for remand." *N. Ill. Gas Co. v. Airco Indus. Gases*, 676 F.2d 270, 273 (7th Cir. 1982) (citations omitted). The party invoking federal jurisdiction bears the burden of proving that removal is proper. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004).

Earlier this year, the U.S. Supreme Court re-emphasized the role of the 30-day clock, noting that "the text of § 1446(b)(1) . . . speaks in strict, mandatory terms." *Enbridge Energy, LP v. Nessel*, 608 U.S. 67, ---, 146 S. Ct. 1074, 1082 (2026). While holding that the 30-day removal time period is not subject to equitable tolling, the Court emphasized that "the federal civil removal statutes have an 'obvious concern with efficiency,' and a 'general interest in avoiding prolonged litigation on threshold nonmerits questions.'" *Id.* at 1084 (first quoting *BP p.l.c. v. Mayor & City*

*Council of Balt.*, 593 U.S. 230, 245 (2021); and then *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 237 (2007)). The Court went on to say that the removal statutes expressed Congress's "manifest interest in resolving threshold removal questions early and conclusively." *Id.*

This Court has described § 1446(b)'s 30-day time limit in a similar way, noting that its purpose is twofold: "to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system" and to prevent the "delay and waste of resources" that occurs when a case has to start from square one in a second court—a delay that can extend "months or even years." *Wilson v. Intercollegiate (Big Ten) Conf. Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982). The Sheriffs here tried to get that tactical advantage by waiting for the Wisconsin Supreme Court to consider their opposition to the Petition. When that initial opposition was unsuccessful, they then continued to wait to seek removal until just three days before Voces was set to file its opening brief and 104 days after they could have first attempted to remove.

### B. Voces' Petition before the Wisconsin Supreme Court was an "initial pleading" triggering the 30-day period for removal.

The District Court rejected the Sheriffs' attempt to postpone the start of the 30-day window for removal under § 1446(b), finding that Voces' Petition was the "initial pleading setting forth the claim for relief upon which such action or proceeding is based" under § 1446(b)(1). Voces served the Sheriffs with the Petition on September 18, 2025, and the Clerk of the Wisconsin Supreme Court transmitted the newly-filed Petition to each of the Sheriff respondents the same day. On September 23, the Supreme Court ordered the Sheriffs to file a response to the Petition. *See* Dkt. 12, at 35–36. At that point the Sheriffs had the notice required to trigger the removal time clock: they had been sued for making illegal arrests in the form of honoring ICE detainers, and they knew what authority, state or federal, they claimed to justify their actions.

The Sheriffs assert that there was no initial pleading to make this case a civil action until the Wisconsin Supreme Court acted on the Petition. *See* Appellants' Br. ("Br.") at 9. However, § 1446(b)(1) contains no requirement of state court action. The time to remove is triggered by service of an initial pleading containing the grounds on which the

defendant seeks to remove. The clock starts *before* the state court takes any action regarding its jurisdiction or otherwise. Section 1446(b)(1) does not enumerate any preliminary steps the state court must take before removal—it is the filing and service of the initial pleading that starts the clock.

The Sheriffs claim that, until the Wisconsin Supreme Court ruled on the exercise of its jurisdiction under Wis. Stat. §809.70(3), this case did not become a civil action because the Court could limit, reframe, or decline to hear issues in the case. Br. at 11, 19. But the Sheriffs never explain why the fact that the Supreme Court has the discretion to not proceed with a case has any effect on § 1446(b)'s removal-notice timing.[2]

In any case, the Wisconsin Supreme Court has made clear that service of a Petition that requires a response initiates the proceeding, and the Court will begin to exercise its jurisdiction over the parties in that action. In *State ex rel. Sonneborn v. Sylvester*, the Court stated:

---

[2] Respondents cite a 94-year-old proceeding, *In re Exercise of Original Jurisdiction of Supreme Court*, for the proposition that petitions were not viewed as commencing an action, but fail to include the Court's statement that "[t]he suggestions herein contained are not intended to have the effect of a rule of court, but are merely by way of suggestion." 201 Wis. 123, 229 N.W. 643, 646 (1930).

> [P]ersonal jurisdiction was supplied by the service of an order to show cause why leave should not be granted. We consider that such personal jurisdiction suffices not only for our determination to take jurisdiction of the controversy described in the petition, but also for our determination of the procedure to be followed and for our ultimate adjudication.

25 Wis. 2d 177, 183, 130 N.W.2d 569, 572 (1964), *overruled on other grounds by Pavalon v. Thomas Holmes Corp.*, 25 Wis. 2d 540, 131 N.W.2d 331 (1964).

Additionally, the Wisconsin Supreme Court has issued preliminary injunctive relief based only on a petition, even before ruling that it would exercise its original jurisdiction over the action. *See Jefferson v. Dane Cnty.*, 2020 WI 90, ¶ 9, 394 Wis. 2d 602, 951 N.W.2d 556 (temporary injunction issued March 31, 2020; order issued accepting original jurisdiction April 1, 2020). Taken together, *Sonneborn* and *Jefferson* illustrate that petitions to commence an original action are treated as the initial pleading in a case giving the Wisconsin Supreme Court the power to issue orders and injunctive relief. The Court has that power once the petition is filed, regardless of whether it has yet decided to exercise original jurisdiction over the case.

Moreover, and as the District Court noted, the practice of the Wisconsin Supreme Court in many recent cases, as in this case, is to require no additional pleadings beyond the petition itself. The Sheriffs' citation to *Labor and Farm Party v. Elections Board,* 117 Wis. 2d 351, 344 N.W.2d 177 (1984) (per curiam), in fact illustrates why the petition, and not the Court's subsequent actions on the petition, starts the clock. In that case, involving the right of a candidate to be listed on a presidential ballot, the Court's decision on whether to accept the petition, *and its decision on the merits*, were both part of the single order issued by the Court. *See id.* at 352, 358; *see also James v. Heinrich*, 2021 WI 58, 397 Wis. 2d 517, 960 N.W.2d 350 (leave to commence action and temporary injunction granted in same order and based only on petition for original action); *Wis. Legislature v. Palm*, 2020 WI 42, ¶ 9, 391 Wis. 2d 497, 942 N.W.2d 900 (accepting jurisdiction of original action and issuing final order without additional pleadings in the action beyond the petition). To accept the Sheriffs' interpretation (that the 30-day clock starts when the Wisconsin Supreme Court decides to exercise its original-action jurisdiction) would generate the absurd result that the respondent

in *Palm* had already lost the case at the same moment the right to remove commenced.

The Sheriffs repeatedly misinterpret the import of the removal requirement that "an action could have been brought originally in federal court." Br. at 10 (quoting *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019)). This simply means that there must be federal subject-matter jurisdiction over the matter—not that the specific forms of relief requested (*e.g.*, accepting the petition or granting relief under Wisconsin's Uniform Declaratory Judgments Act) be relief that a federal court could provide. In other words, for a case to be removable, the case must contain the elements of diversity jurisdiction, federal-question jurisdiction, or another basis for the federal court to exercise its jurisdiction, but there is no additional requirement in the removal statutes that a state court rule on its own jurisdiction.[3]

The Sheriffs further assert that the Petition is more like a pre-dispute discovery mechanism, relying primarily on *Teamsters Local*

---

[3] The rest of the holding in *Home Depot*, which addressed whether a third-party defendant who was brought into a case later had a separate right to remove a pending action, has no bearing on the issues in this case.

*404 Health Services & Insurance Plan v. King Pharmaceuticals, Inc.*, 906 F.3d 260 (2d Cir. 2018). Br. at 11–13. Essential to the Second Circuit's ruling in that case, though, was that pre-dispute discovery actions do not define the dispute or the causes of action. As the Court put it, "the nebulous nature of potential claims and parties in the hypothetical future action to which the [pre-dispute discovery] relates puts district courts in the difficult situation of determining subject matter jurisdiction without adequate pleadings to assess." *Id.* at 267.

Pre-dispute discovery is just that: "pre-dispute." And sans dispute, there are no pleaded causes of action or requested remedies. In stark contrast to "nebulous" pre-suit discovery, the Petition filed at the Wisconsin Supreme Court clearly articulates a dispute, pleads the factual background, includes specific causes of action under Wisconsin law, and sets out a detailed prayer for relief.

The Sheriffs claim that the Petition sought no more than to have the Wisconsin Supreme Court exercise its jurisdiction and thus could not constitute an initial pleading.[4] Br. at 11. Certainly, Voces asked the

---

[4] The Sheriffs' citation to *Walker v. Trailer Transit, Inc.*, 727 F.3d 819 (7th Cir. 2013, here is inapposite. That case dealt with the distinct matter of whether a case could be removed under the Class Action Fairness Act after a plaintiff amended a

Court to exercise its original action jurisdiction, but the Petition seeks much more than that. The Petition requests a detailed set of declaratory rulings under various Wisconsin statutes and an injunction to require the Sheriffs to comply with such rulings. *See* Dkt. 1-2, Petition, at 27–28. And those requests for relief were not premature—given *Heinrich* and *Palm*, the Wisconsin Supreme Court could have simultaneously granted Voces' Petition, granted declaratory judgment, and enjoined the Sheriffs from violating state law. The Petition contained all the elements of a typical federal court complaint and the information the Sheriffs now rely on as purported bases for federal jurisdiction.

As the District Court noted, outside of Voces' Petition, there is nothing that could serve as an "initial pleading" under 28 U.S.C. §1446(b)(1). Dkt. 23 at 5. The time to remove was in the thirty days after service, and not after engaging in the litigation in the Wisconsin Supreme Court by responding to the Petition.

---

complaint to allege for the first time that the damages exceeded the statutory threshold. *Id.* at 821. In contrast, here there has been no change in the causes of action alleged from the date of filing of the Petition.

### C. The Sheriffs should not be allowed to profit from waiting to see how the Wisconsin Supreme Court would rule on their opposition to the Petition before removing.

The Sheriffs argue that the Supreme Court's December 3 order deciding to exercise its original jurisdiction and ordering additional briefing somehow transformed the Petition into an "initial pleading" for the first time and provided the Sheriffs with thirty days to remove pursuant to § 1446(b)(1). However, courts have cautioned against allowing defendants, like the Sheriffs here, "to test the waters in state court [by filing a demurrer] and, finding the temperature not to [their] liking, beat a swift retreat to federal court." *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 188 (4th Cir. 2017) (citation and quotations omitted) (remanding case defendants sought to remove under 28 U.S.C. § 1442). That sort of behavior is not only forum-shopping; it is also "antithetical to federal-state court comity." *Id.*; *see also Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 163 (4th Cir. 1997) ("[T]he extension of the removal period in the case where the initial pleading does not state the factual or legal bases for removal should not be allowed to cover strategic delay interposed by a defendant in an effort to determine the state court's receptivity to his litigating position."). The

Sheriffs' attempt to distinguish *Northrop Grumman* by describing the procedural history of that case is unavailing. Like Northrop's shoe-dragging, *see Northrop Grumman*, 865 F.3d at 184–85, the Sheriffs waited 104 days to remove and only did so *after* learning of the Wisconsin Supreme Court's decision. And similar to Northrop's last-minute gambit of removing the night before a hearing, *id.* at n.6, the Sheriffs removed just three days before the opening merits brief was due. This is just the type of forum-shopping condemned by the Fourth Circuit in that case.

The Sheriffs have also suggested that the Supreme Court's December 3 order instructing the parties to provide additional briefing inserted federal issues into the action, and therefore made it removable. That argument is equally unavailing. The Court asked for briefing on an issue raised as a defense by the Sheriffs, not *sua sponte*. And, as argued *infra*, Section III, III.C, a defense to state-law causes of action based in federal law does not give rise to grounds for removal.

Nor did the Supreme Court's briefing order create the Sheriffs' relationship with the federal government that they now claim makes them federal officers under § 1442. If the Sheriffs are federal officers because of 8 U.S.C. §§ 1357(g)(1), (10) (though they are not), they were

federal officers, and *knew* they were federal officers, prior to the state court's order asking for briefing on the import of § 1357(g). The Sheriffs made those arguments in their Response to the Petition, well before the Supreme Court's briefing order. The order merely asked the Sheriffs to brief their alleged defenses. It did not change the pleadings or requested relief of which the Sheriffs had prior notice.

The District Court correctly ruled that the Sheriffs were required to remove, if at all, within thirty days of service of the Petition. When the Sheriffs failed to do so, the Court rightly remanded the case to the Wisconsin Supreme Court. The District Court's order should be affirmed.

## II. The Sheriffs cannot remove under 28 U.S.C. § 1441 because their alleged "federal issues" are either state-law issues or federal defenses.

If the Court finds that the Sheriffs' Notice of Removal was timely filed, it should still remand this case to the District Court, so that court can consider Voces' arguments that neither federal-issue nor federal-officer removal is proper. But if this Court chooses to address these bases for removal, it should find they do not apply in this case.

The party seeking federal-issue removal bears the burden of demonstrating federal jurisdiction, and "federal courts should interpret

the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). "Courts should . . . presume that the plaintiff may choose his or her forum." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

When a state-court plaintiff pleads only state-law claims, removal to federal court is rarely proper. Federal subject-matter jurisdiction exists in only a very limited subset of cases where only state-law claims are pled. *See Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1033–34 (7th Cir. 2014) ("[T]he existence of a federal issue rarely allows removal."). A case falls into that limited category only if it meets four criteria: "a federal issue is [] (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

Importantly, a federal-law defense is not enough to meet the *Grable/Gunn* test. *See Hartland Lakeside Joint No. 3 Sch. Dist.*, 756 F.3d at 1033–34. A defendant therefore cannot remove to federal court simply

by asserting a federal defense in their answer or other responsive pleading. *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995).

The Sheriffs' "federal issues" are difficult to parse, but they seem to be raising one of three questions. First, does Section 1357(g)(1) grant Wisconsin law enforcement the ability to honor ICE detainers absent a state prohibition on doing so? Second and alternatively, does Section 1357(g)(1) grant Wisconsin law enforcement the ability to honor ICE detainers if the state has only an implied prohibition on doing so? Third, if there is a prohibition and therefore a conflict between the laws, can Section 1357(g) nevertheless "provide[] [the Sheriffs] with authority" for honoring ICE detainers, Br. at 29, and therefore override the state prohibition?

The first and second issues are questions of state law. And because they are framed to assume an interpretation of state law that Voces rejects, neither issue is "necessarily raised" or "actually disputed." The third issue is just a poorly disguised preemption defense. None of these issues can trigger federal-issue removal.

### A. Whether Section 1357(g) grants Wisconsin law enforcement the ability to honor detainers absent a state prohibition on doing so assumes the very interpretation of state law that Voces rejects and is therefore neither raised nor disputed.

Voces made two arguments in its Petition for an Original Action. First, Wis. Stat. § 818.01 *explicitly* forbids state law enforcement from honoring detainers. Dkt. 1-2, Petition, at 22 (¶ 39). Second, even if Wis. Stat. § 818.01 does not forbid compliance with ICE detainers, no part of Wisconsin law affirmatively grants state law enforcement the authority to make civil immigration arrests, and when Wisconsin law does not affirmatively grant arrest authority, making arrests is prohibited. *See* Dkt. 1-2, Petition, at 23–24 (¶¶ 41–42, 46) (citing *James v. Heinrich*, 2021 WI 58, ¶ 18, 397 Wis. 2d 517 ("[I]f the legislature did not specifically confer a power, the exercise of that power is not authorized.")). For that reason, Wisconsin law at least *implicitly* prohibits compliance with ICE detainers.

The Sheriffs completely ignore Voces' argument in order to concoct a non-existent "federal issue": what happens when Wisconsin law does *not* prohibit (*i.e.*, is silent about) complying with ICE detainers? *See* Br. at 24. Specifically, can Section 1357(g) provide the relevant authority to

honor ICE detainers when state law does not prohibit it? They say it can. *See* Br. at 25.

The framing of that question, though, assumes the answer to the very state-law question in front of the Wisconsin Supreme Court. And it assumes the state-law interpretation that Voces rejects. For that reason, the question is neither "necessarily raised" nor "actually disputed." Voces' arguments about the effect of Section 1357(g) have always been premised on its claim that Wisconsin law prohibits compliance with ICE detainers. Voces has never taken a position on the effect Section 1357(g) would have if Wisconsin law did not prohibit compliance with ICE detainers.

All four requirements for federal-issue removal must be met for federal jurisdiction to be proper. *See Gunn*, 568 U.S. at 258. The Sheriffs' purported federal question of whether Section 1357(g)(1) grants Wisconsin law enforcement the ability to honor ICE detainers, absent a state prohibition on doing so, is neither "necessarily raised" nor "actually disputed" because it assumes an interpretation of state law that Voces rejects. For that reason, it cannot trigger federal-issue removal.

### B. Whether Section 1357(g) nonetheless grants Wisconsin law enforcement the ability to honor detainers because implied prohibitions do not have the same effect as explicit prohibitions again assumes an interpretation of state law that Voces rejects and is therefore neither raised nor disputed.

In the Sheriffs' view, if there is a state prohibition on compliance with ICE detainers, it is at most an implicit prohibition. *See* Br. at 24–26. They argue that there is an outstanding federal question about whether an implicit prohibition ("silen[ce]," in their words, Br. at 30) can conflict with federal law. They concede that an explicit prohibition would conflict with federal law, and federal law could not preempt it. Br. at 44 ("[F]ederal law does not and cannot prevent states from deciding whether their own officers participate in immigration enforcement."); *cf.* Br. at 24 (explicit prohibitions cannot be preempted). So, the question is whether an implicit prohibition is materially different from an explicit one.

Again, this is a state-law question. Indeed, it is just a different framing of the question at the heart of the state Supreme Court case: whether state law prohibits these arrests. *See* Dkt. 1-2, Petition, at 22–24 (¶¶ 38–42), 25–26 (¶¶ 45–46). The Sheriffs disagree with Voces' view that even if there is no explicit prohibition on civil immigration arrests, the lack of an affirmative grant of such arrest authority has the same

effect. *See* Response, Dkt.1-2 at 62 ("[t]he power to arrest need not always be set forth in statute"). But instead of waiting for the Wisconsin Supreme Court to decide that issue of state law, they try to smuggle it into federal court by repackaging it as a "federal issue." Again, though, because this "issue" is premised on a state-law interpretation that Voces rejects, it is neither raised nor disputed, and this Court should reject the Sheriffs' attempt to create a "federal issue" out of a state-law question.

### C. Whether Section 1357(g) grants Wisconsin law enforcement the ability to honor detainers, despite a state prohibition on doing so, is an issue of federal preemption, and therefore cannot trigger federal-issue removal.

The only issue that is "necessarily raised," "actually disputed," and not a matter of state law is: what happens when Section 1357(g)(1)'s grant of arrest authority conflicts with state-law arrest authority? Can it override Wisconsin's prohibition on civil immigration arrests? The Sheriffs say it can. *See* Br. at 26 (disclaiming preemption defense while making one).

This is a preemption defense. It therefore cannot trigger federal-issue removal. *Ne. Rural Elec. Membership Corp. v. Wabash*

*Valley Power Ass'n, Inc.*, 707 F.3d 883, 890 (7th Cir. 2013) (preemption defense cannot serve as the basis for federal-issue removal).

The Sheriffs try to paint their argument as something else: a "question of whether federal law provides authority for the Sheriffs to comply with ICE detainers." Br. at 26. But regardless of how they choose to phrase it, it is still a preemption question. *Cf., e.g.*, *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25 (1996) (where federal law permits an exercise of authority that state law bars, the issue is one of preemption); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) (same).

The Sheriffs' contention that their §§ 1357(g)(1) and (10) arguments are not preemption defenses, *see* Br. at 26 ("Reliance on federal law in this circumstance is not a preemption defense . . ."), is particularly unpersuasive given that they rely on these same arguments to justify federal-officer removal. *See infra* Section III. Specifically, their alleged "colorable federal defense" (a requirement of federal-officer removal) is that §§ 1357(g)(1) and (10) *preempt* any conflicting state law by allowing state and local law enforcement to be deputized as federal immigration agents. *See* Br. at 41–48. The Sheriffs cannot have it both ways—either

§ 1357(g) does have preemptive effect (or, at least, there is a colorable argument that it does) or it does not.

### D. There is no material disagreement between the parties that requires this Court to interpret a provision of Section 1357(g), and the Sheriffs' attempts to put that provision at issue is mere distraction.

The Sheriffs next try to put at issue the meaning of § 1357(g)(1)'s phrase "to the extent consistent with State and local law." *See* Br. at 30. Section 1357(g) allows states and localities to enter into 287(g) agreements with ICE, but only "to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1).

The Sheriffs say the parties disagree about what that phrase means. Br. at 30–31. Specifically, the Sheriffs believe that a federal grant of arrest authority is inconsistent with state law only when state law *explicitly* prohibits that arrest authority. *See* Br. at 31. When there is no prohibition, or when there is only an implicit prohibition, there is no inconsistency, they suggest. *See* Br. at 30. Voces, meanwhile, argues that a federal grant of arrest authority is inconsistent with state law when state law prohibits that arrest authority, regardless of whether the prohibition is implicit or explicit. Because of this disagreement, the

Sheriffs contend, "this case necessarily will require resolution of the meaning of [that] phrase." Br. at 30. Not so.

This is just another attempt at litigating a state-law premise that is neither raised nor disputed: whether state law that does not prohibit such arrests, or only implicitly prohibits such arrests, is consistent with Section 1357(g)'s grant of such arrest authority. Again, Voces' state-law case is premised on the assumption that Wisconsin law does prohibit these arrests. Voces has never put at issue Section 1357(g)'s effect if the Wisconsin Supreme Court rejects Voces' interpretation of state law. The Court should again reject the Sheriffs' attempt to bring a state-law interpretation question into this federal case.[5]

### E. Even if the Sheriffs' "federal issues" were necessarily raised or actually disputed, the Sheriffs have failed to show that these issues are "substantial" or "capable of resolution in federal court without disrupting the federal-state balance approved by Congress."

Under *Grable* and *Gunn*, an issue only creates "arising under" jurisdiction if it is also "(3) substantial, and (4) capable of resolution in

---

[5] The Sheriffs identify another "federal issue:" whether, setting aside 8 U.S.C. § 1357(g), "state and local law enforcement officers have implicit authority" to comply with ICE detainers. Br. at 26. But this argument also rests on the premise that Wisconsin law does not prohibit or only implicitly prohibits compliance with ICE detainers, and is therefore not "necessarily raised" or "actually disputed."

federal court without disrupting the federal-state balance approved by Congress." *Gunn,* 568 U.S. at 258. The Sheriffs address neither of these requirements.

For an issue to be "substantial," it must be "importan[t] . . . to the federal system as a whole." *Gunn*, 568 U.S. at 260. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue." *Id.*

For instance, the dispute in *Grable* was important to the federal system as a whole because the resolution of a state-law claim depended on whether a federal agency (the IRS) had given the plaintiff adequate notice, *as defined by federal law*. *Grable*, 545 U.S. at 314–15. The meaning of "adequate notice" under federal law had significant implications throughout the federal system, and the answer to that federal-law question was dispositive to the state-court case. *Id.* at 315–16.

In contrast, the issue here—whether Wisconsin law bars local law enforcement from complying with ICE detainers—has no impact throughout the federal system. This case centers on whether local

sheriffs' actions are compatible with state laws, and the resolution is particular to the State of Wisconsin and its statutory scheme governing arrest authority.

This case also founders on the fourth element of the removal test: that the case be capable of resolution in federal court without disrupting the federal-state balance approved by Congress. For the reasons described below, *see infra* Section III.B.2, this case is a quintessential matter of state law, and a federal court's intervention would effectively "interpos[e] federal authority between a State and its municipal subdivisions." *Cf. Nixon v. Mo. Mun. League*, 541 U.S. 125, 140 (2004).

## III. The Sheriffs cannot remove under 28 U.S.C. § 1442 because their decision to honor detainers is not made while "acting under" federal officials and their preemption defense is not colorable.

The Sheriffs are also not entitled to federal-officer removal under 28 U.S.C. § 1442. As is true of federal-question removal, the Sheriffs bear the burden of establishing that this case is removable under § 1442. *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180–81 (7th Cir. 2012). They must establish four things: they are "(1) 'person[s]' (2) 'acting under' the United States, its agencies, or its officers, (3) that [have] been sued 'for or

relating to any act under color of such office,' and (4) [have] a colorable federal defense to the plaintiff's claim." *Id.* (quoting 28 U.S.C. § 1442(a)).

The Sheriffs fail to establish that they are "acting under" federal officials or have a colorable federal defense, and therefore cannot remove under § 1442.[6]

### A. The Sheriffs are not "acting under" federal officials when they make a decision that is wholly within their discretion.

To "act under" a federal official, an individual must 1) assist the federal government by agreeing to perform tasks the federal government would otherwise do itself, and 2) be under the federal government's "subjection, guidance, or control" while doing the relevant thing (*i.e.*, doing the thing for which they are being sued). *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 151–52 (2007).

---

[6] Below, Voces made additional federal-officer removal arguments about the Sheriffs' pleading deficiencies. Voces is no longer advancing those arguments. In addition, Voces argued that the Sheriffs had not been sued "for or relating to" acts taken while acting under federal officers (the third element). Roughly a month after Voces filed its Reply Brief in Support of Remand, the Supreme Court decided *Chevron U.S.A. Inc. v. Plaquemines Parish*, 608 U.S. ----, 146 S. Ct. 1052 (2026), significantly expanding the meaning of "for or relating to." *See id.* at 1060–62. In light of that opinion, Voces is no longer advancing its "for or relating to" arguments.

Both elements are required. *See id.* (noting that "acting under" connotes both the provision of assistance and the type of relationship); *Ruppel*, 701 F.3d at 1181 ("'[A]cting under' must involve an effort to assist, or to help carry out, the federal *superior's* duties or tasks.") (emphases removed and added); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 942 (7th Cir. 2020) ("The relevant relationship . . . involves subjection, guidance, or control. *In addition* . . . the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.") (quotations and citations omitted) (emphasis added); *Att'y Gen. of N.J. v. Dow Chem. Co.*, 140 F.4th 115, 122 (3d Cir. 2025) (noting separate requirements of a "private party assist[ing] or carr[ying] out the Government's duties or tasks" and "the Government direct[ing], guid[ing], or control[ing] the private party").

Voces concedes that a sheriff's decision to honor a detainer assists the federal government and would meet the first requirement for "acting under." Voces disagrees with the Sheriffs' analysis of the "subjection, guidance, or control" element. *See* Br. at 36–38.

The Sheriffs again conflate two distinct things: whether an agency relationship exists when a sheriff is deciding *whether* to honor a detainer

and whether an agency relationship exists while a sheriff *is* honoring that detainer.

This case involves the former, not the latter. That distinction is important. Once a sheriff has decided to honor a detainer, the way they choose to go about honoring the detainer may be made subject to federal officer guidance and control, just as once a company decides to enter into a supply contract with the federal government, its decisions about which production methods, production locations, materials, and labor to use may well be made subject to federal officer guidance and control. *Cf. Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015); *Baker*, 962 F.3d 937; *Betzner v. Boeing Co.*, 910 F.3d 1010 (7th Cir. 2018) (cases all concerning companies' actions related to how they administered supply contracts they had already entered into). But the federal government plays no controlling role in the threshold decision—whether a sheriff is going to honor that detainer in the first place (or whether the company is going to agree to serve as the government's supplier in the first place).

The federal government plays no controlling role in the Sheriffs' threshold decisions because to do so would violate anti-commandeering principles. "[S]ettled constitutional law clearly establishes that

[immigration detainers] must be deemed requests to avoid conflict with the Tenth Amendment." *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1241, n.7 (9th Cir. 2018) (citation omitted). Under the Tenth Amendment, the federal government "may not compel state and local agencies to expend funds and resources to effectuate a federal regulatory scheme." *Galarza v. Szalczyk*, 745 F.3d 634, 643–645 (3d Cir. 2014). In the context of detainers, that means that "immigration officials may not order state and local officials to imprison suspected aliens subject to removal at the request of the federal government." *Id.* at 645.

The Sheriffs misunderstand Voces' argument below about why it matters that detainers are voluntary.[7] They seem to think Voces is arguing that a party who voluntarily agrees to do something for the federal government is not "acting under" the federal government when it later does that thing. That is not Voces' argument. Rather, Voces argues that the party is not "acting under" the federal government when it decides whether or not to agree to do that thing in the first place.

---

[7] The parties agree that detainers are voluntary, and multiple courts have said they are. *See, e.g.*, *Galarza*, 745 F.3d at 640–41; *City & Cnty. of S.F.*, 897 F.3d at 1241 n.7; *United States v. Uribe-Rios*, 558 F.3d 347, 350 n.1 (4th Cir. 2009).

The Sheriffs rely on *Castillo v. Snyders*, 497 F. Supp. 3d 299 (N.D. Ill. 2020), and *Baker v. Atlantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020), for the proposition that "[n]othing in the binding precedent or the relevant statutes prevents voluntary agreements from bringing state defendants within the meaning of 1442(a)(1)." Br. at 35 (quoting *Castillo*, 497 F. Supp. 3d at 303). But the *Castillo* court's analysis makes the same mistake as the Sheriffs, and *Baker* is inapposite.

Like the Sheriffs, the *Castillo* court conflates "acting under" the federal government in making the *threshold* decision of whether to honor a detainer with "acting under" the federal government *while* honoring that detainer. *See Castillo*, 497 F. Supp. 3d at 303 ("The Sheriff performed a task—the continued detention of a suspected undocumented person—to afford ICE officers the chance to take the suspect into custody. *In performing this task*, the Sheriff was acting on behalf of the ICE officers . . . ").

*Baker* does not help Appellants, either. The *Baker* plaintiffs sued various companies for polluting the soil when they were *already under contract* with the federal government to produce certain industrial materials. 962 F.3d at 939–40. The plaintiffs did not sue the companies

for entering into those agreements in the first place. Conversely, Voces is not suing the Sheriffs for acts done while honoring detainers. It is suing them for choosing to honor the detainers at all. And that is a decision in which the federal government plays no role, let alone a role of "subjection, guidance, or control." *Watson*, 551 U.S. at 151.

### B. The Sheriffs have no "colorable" preemption defense because the Supreme Court and this Court have already rejected their preemption arguments.

To remove under § 1442, the Sheriffs must also demonstrate that they have a "colorable federal defense" to Voces' state-law claims. *Ruppel*, 701 F.3d at 1180–81. The Sheriffs raise only a preemption defense, *see* Dkt. 1, at 7; Dkt. 13, at 23–29, and they have failed to show that it is colorable.

To be colorable, their preemption argument must at least be "plausible." *Ruppel*, 701 F.3d at 1182. An argument that is squarely foreclosed by precedent is not a "plausible" argument. And for three reasons, the Sheriffs' preemption argument is squarely foreclosed by Supreme Court caselaw and this Circuit's caselaw.

First, the Supreme Court in *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018), held that a state law can only be

preempted if that law regulates private actors. Second, this Circuit has held that a federal law that explicitly allows states to not cooperate with the federal government cannot simultaneously preempt state law barring that cooperation. Third, this Court and many others have held that refusing to assist is not the same thing as imposing an obstacle and therefore cannot constitute obstacle preemption.

#### 1. Because federal law has preemptive effect only on state statutes that regulate private actors, there is no colorable argument that 8 U.S.C. §§ 1357(g)(1) and (10)—which do not even mention private actors—can preempt Wis. Stat. § 818.01.

In *Murphy v. NCAA*, the Supreme Court "announced a broad rule that a valid preemption provision 'must be best read as one that regulates private actors.'" *McHenry Cnty. v. Raoul*, 44 F.4th 581, 587 (7th Cir. 2022) (quoting *Murphy*, 584 U.S. at 477). "After providing some examples of preemption," all of which involved regulation of private actors, "the Court reiterated that 'every form of preemption is based on a federal law that regulates the conduct of private actors, not the States.'" *Id.* (quoting *Murphy*, 584 U.S. at 479). This was not dicta. It was central to the Court's holding that a federal law making it unlawful for states to authorize

sports gambling had no preemptive effect. *McHenry Cnty. v. Raoul*, 574 F. Supp. 3d 571, 579 (N.D. Ill. 2021), *aff'd*, 44 F.4th 581 (7th Cir. 2022).

Neither § 1357(g)(1) nor (10) regulates private actors. The only actors § 1357(g)(1) refers to are "the Attorney General," a "State," "any political subdivision of a State," and "an officer or employee of the State or subdivision." For § 1357(g)(10), the only actors are "the Attorney General" and "any officer or employee of a State or political subdivision of a State." Under *Murphy*, the preemption analysis stops there: the statute does not regulate private actors, so it has no preemptive effect.

Courts across the country, in contexts similar to this one, have agreed that *Murphy* dooms any preemption argument. For instance, in *Ocean County Board of Commissioners v. Attorney General of State of New Jersey*, the Third Circuit held that §§ 1373 and 1644 of the Immigration and Nationality Act (INA) could not preempt a New Jersey law that barred counties and local law enforcement from assisting federal immigration authorities by, among other things, providing access to local law enforcement databases or providing notice of a detained individual's upcoming release from custody. 8 F.4th 176, 178–79, 181–82 (3d Cir. 2021). It noted that "for a federal law to preempt state law . . . it must

satisfy two requirements." *Id.* at 181. First, it "must represent the exercise of a power conferred on Congress by the Constitution." *Id.* Second, because "the Constitution confers upon Congress the power to regulate individuals, not States," the federal law "must be best read as one that regulates private actors." *Id.* The Court's "conclusion that neither [of the provisions at issue] regulate[d] private actors [was] fatal to Appellants' argument that they preempt[ed]" the state directive. *Id.*

Other courts have agreed. In *City and County of San Francisco v. Sessions*, the court found that because the provision at issue (§ 1373 of the INA, which bars states and localities from prohibiting or restricting certain types of information-sharing with federal immigration officials) did not regulate private actors, the United States' argument that it validly preempted a state law barring certain kinds of information-sharing was unpersuasive. 349 F. Supp. 3d 924, 950 (N.D. Cal. 2018), *affirmed in unrelated part, vacated in unrelated part, sub nom. City & Cnty. of S.F. v. Barr*, 965 F.3d 753 (9th Cir. 2020); *see also Oregon v. Trump*, 406 F. Supp. 3d 940, 972 (D. Or. 2019), *affirmed in unrelated part, vacated in unrelated part, sub nom. City & Cnty. of S.F.*

*v. Garland*, 42 F.4th 1078 (9th Cir. 2022); *Colorado v. U.S. Dep't of Justice*, 455 F. Supp. 3d 1034, 1059 (D. Colo. 2020).

If the Sheriffs' interpretation of §§ 1357(g)(1) and (10) as overriding any state law that bars state or local officials from making civil immigration arrests is correct (though it is not), then the law regulates states directly and can have no preemptive effect. *See United States v. California*, 921 F.3d 865, 890 (9th Cir. 2019), *cert. denied,* 590 U.S. 1015 (2020) (rejecting United States' preemption claim because "[e]xtending conflict or obstacle preemption to [a California law that prohibits state law enforcement from transferring people to immigration authorities unless authorized by a judicial warrant or judicial probable cause determination] would, in effect, 'dictate[] what a state legislature may and may not do,' because it would imply that a state's otherwise lawful decision *not* to assist federal authorities is made unlawful when it is codified as state law." (quoting *Murphy*, 584 U.S. at 474)).

#### 2. Even without *Murphy*, the Sheriffs can present no colorable federal preemption defense because they have no viable argument that § 1357(g) and Wisconsin law conflict.

"Conflict preemption applies when there is an actual conflict between state and federal law such that it is impossible for a person to

obey both, or when state law stands as an obstacle to fully accomplishing the objectives of Congress." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 646–47 (7th Cir. 2019). The Sheriffs do not argue that it is impossible for them to comply with both federal and state law, nor could they. Instead, they argue that Wis. Stat. § 818.01 (specifically, Voces' interpretation of it as barring state and local law enforcement from making civil immigration arrests) "stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Br. at 46 (quoting *Matter of Est. of Medcare HMO*, 998 F.2d 436, 440 (7th Cir. 1993)).

According to the Sheriffs, if Wis. Stat. § 818.01 bars state and local law enforcement from making civil immigration arrests, it "would effectively hamstring the ability of any state's law enforcement officers to cooperate with ICE which would stand as a clear obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Br. at 45 (citation and quotations omitted).

Courts, including this one, have rejected this very argument. When a federal statute gives states a choice whether to cooperate, the federal statute cannot simultaneously preempt state law that bars cooperation.

The federal statute on which the Sheriffs rely, § 1357(g)(1), provides that the Attorney General can enter into 287(g) agreements with state or local law enforcement only "to the extent consistent with State and local law," 8 U.S.C. § 1357(g)(1), and that "[n]othing in [the relevant subsection] shall be construed to require any State or political subdivision of a State to enter into an agreement with the Attorney General under this subsection," § 1357(g)(9). In other words, it gives states and localities the choice to allow or not allow state and local law enforcement to cooperate. *See City of El Cenizo v. Texas*, 890 F.3d 164, 177 (5th Cir. 2018). And "the choice of a state to refrain from participation cannot be invalid under the doctrine of obstacle preemption where, as here, it retains the right of refusal." *California*, 921 F.3d at 890 (upholding California law that barred state and local law enforcement from detaining people on the basis of hold requests and transferring people to immigration authorities unless authorized by judicial warrant or judicial probable cause determination).

This Court said the same thing in *McHenry* when it held that an Illinois law barring state and local law enforcement from entering into 287(g) agreements with ICE did not conflict with federal law. 44 F.4th at

592. There, as here, "[t]he relevant federal statutes provided states and localities the *option*, not the *requirement*, of assisting federal immigration authorities." *Id.* (citation and quotations omitted). Given that fact, this Court said, "[i]t would make no sense to hold that a federal statute premised on State cooperation preempts a State law withholding that cooperation." *Id.*

The Sheriffs concede that "federal law does not and cannot prevent states from deciding whether their own officers participate in immigration enforcement." Br. at 44. But they simultaneously argue that if Wis. Stat. § 818.01 does restrict state and local officers from participating in immigration enforcement, then the law is preempted and invalid (or, at least, there is a colorable argument that it is). *See* Br. at 45–46. These two things cannot both be true at once. The Sheriffs must present a colorable defense, and an internally contradictory argument does not meet that bar.

Even putting the Sheriffs' inconsistency aside, they offer no convincing explanation of why *McHenry* does not squarely foreclose their preemption argument. They attempt to distinguish Wis. Stat. § 818.01 from the Illinois law at issue in *McHenry*, saying that Illinois has

expressly targeted state cooperation with immigration officials, whereas "Wisconsin has decided no such thing." Br. at 44. This is a distinction without a difference.

If Wis. Stat. § 818.01 bars state law enforcement from making civil immigration arrests on behalf of immigration officials (what the Wisconsin Supreme Court agreed to decide when it accepted Voces' Original Action Petition), then it has the same effect that the laws in *McHenry* and *California* had, and the analysis and conclusion are exactly the same.[8]

Similarly unpersuasive is their argument that federal courts should be *more* willing to find conflict preemption "when applying state laws that arguably implicate, but do not expressly address, state and local cooperation with ICE." Br. at 46. They argue that if federal law does not preempt Wis. Stat. § 818.01, then, by extension, federal law does not preempt "every other state statute that addresses arrests in civil actions generally." Br. at 46. Such a holding, they say, "would prevent state and

---

[8] The Sheriffs' citations to *Matter of Estate of Medcare HMO*, 998 F.2d 436, 440 (7th Cir. 1993), a case not about federal immigration law, but about bankruptcy, does not change this. *See* Br. at 45–46. In any event, that case predates *McHenry County*.

local law enforcement from cooperating with ICE even in states that had not considered, and expressly prohibited, such cooperation." *Id.*

Not true. When a federal court holds that a federal statute does not preempt a state statute, its interpretation of the state law at issue is not binding. *See Ind. Right to Life Victory Fund v. Morales*, 66 F.4th 625, 627 (7th Cir. 2023). Only a state supreme court can definitively hold that state law bars state and local law enforcement from cooperating with ICE. *Id.* (noting the Indiana Supreme Court is "the only body that can definitively construe" Indiana law). If the Sheriffs want to ensure that Wisconsin law enforcement is not prevented from cooperating with ICE, they can argue as much in front of the Wisconsin Supreme Court.

Moreover, the Sheriffs' argument about "sensitiv[ity]" to preemption in this context gets the issue exactly backwards. Br. at 46. When a finding of preemption would mean "interposing federal authority between a State and its municipal subdivisions," a court must treat a claim of preemption "with great skepticism." *See Nixon v. Mo. Mun. League*, 541 U.S. 125, 140 (2004) (holding that a Missouri law prohibiting state political subdivisions from providing certain telecommunications services was not preempted by a federal law barring states from

prohibiting "any entity" from providing those same telecommunications services).

For that reason, courts operate under the "working assumption that federal legislation threatening to trench on the States' arrangements for conducting their own governments should be . . . read in a way that preserves a State's chosen disposition of its own power, in the absence of [a] plain statement" to the contrary. *Id.*

The Sheriffs have no plausible argument that § 1357(g)(1) and Wis. Stat. § 818.01 conflict. For that reason alone, their theory of preemption is not colorable.

#### 3. Because Wisconsin's refusal to assist federal immigration officials does not impede them, the Sheriffs have no colorable obstacle preemption argument.

The Sheriffs argue that Voces' interpretation of Wis. Stat. § 818.01 is obstacle preempted by federal law because "it would prevent state and local law enforcement from cooperating with ICE." Br. at 46. But declining to cooperate is not the same as imposing an obstacle, and a state law can only be obstacle preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress." *McHenry Cnty.*, 44 F.4th at 591 (citation and quotations omitted).

True, it might be easier for federal officers to discharge their duties with state and local cooperation, but state laws that prohibit such cooperation "don't make ICE's job more difficult; they just don't make it easier." *United States v. Illinois*, 796 F. Supp. 3d 494, 529 (N.D. Ill. 2025). Indeed, "refusing to help is not the same as impeding." *California*, 921 F.3d at 888 (citation and quotations omitted); *see also City of Chicago v. Sessions*, 888 F.3d 272, 282 (7th Cir. 2018), *vacated in unrelated part by* Nos. 17-2991 & 18-2649, 2018 WL 4268814 (7th Cir. Aug. 10, 2018) (en banc) ("[N]othing in this case involves any affirmative *interference* with federal law enforcement at all, nor is there any interference whatsoever with federal immigration authorities. The only conduct at issue here is the refusal of the local law enforcement to aid in civil immigration enforcement. . ."). "If such were the rule, obstacle preemption could be used to commandeer state resources and subvert Tenth Amendment principles." *California*, 921 F.3d at 888.

Because Wisconsin's choice to not cooperate with the federal government (codified in Wisconsin law) does not impede the federal

government, there is no colorable argument that § 1357 can obstacle preempt Wisconsin law.

## IV. If this Court finds that the Sheriffs are state officials and have not waived Eleventh Amendment immunity, the *Pennhurst* doctrine precludes the District Court from granting relief, and thus remand to the Supreme Court is required.

If this Court finds that the Sheriffs have raised a federal issue or are federal officers for purposes of removal, removal would be improper for another reason: assuming the Sheriffs have not waived their Eleventh Amendment immunity, *Pennhurst State School and Hospital v. Halderman* would prohibit a federal court from barring the Sheriffs from violating state law.

A federal court cannot require a state officer to comply with state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). As the Court noted in *Pennhurst*, "[s]uch a result [would] conflict[] directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* at 106; *see also Trump v. Wis. Elections Comm'n*, 506 F. Supp. 3d 620, 633 (E.D. Wis. 2020), *aff'd*, 983 F.3d 919 (7th Cir. 2020) ("[U]nder the Eleventh Amendment and state sovereign immunity, a

federal court 'cannot enjoin a state officer from violating state law.'" (quoting *Dean Foods Co. v. Brancel*, 187 F.3d 609, 613 (7th Cir. 1999)).

Voces has assumed, and argued below, that the Sheriffs are state officials for purposes of fulfilling their constitutional obligations. Voces based this assumption on *Soderbeck v. Burnett County*, 821 F.2d 446 (7th Cir. 1987), the most recent Seventh Circuit decision addressing whether Wisconsin Sheriffs are county or state officials. The *Soderbeck* court explained that "Wisconsin law establishes that . . . the sheriff acts on behalf of the state when fulfilling his constitutional obligations, not the county." *Id.* at 452; *id.* at 451 ("The Wisconsin Supreme Court has determined that the sheriff 'represents the sovereignty of the State' and is 'accountable only to the sovereign.'" (quoting *Wis. Prof'l Police Ass'n v. Cnty. of Dane*, 106 Wis. 2d 303, 316 N.W.2d 656, 657 (1982))).

Though Voces argued below that the Sheriffs are state officials, it acknowledges on appeal that post-*Soderbeck* developments, including a constitutional amendment and statute making counties liable for judgments against Sheriffs, may call *Soderbeck* and the Wisconsin Supreme Court cases on which it relies into question. Indeed, the Eastern

District of Wisconsin in *Abraham v. Piechowski* held *Soderbeck* was no longer good law. *See* 13 F. Supp. 2d 870, 877–78 (E.D. Wis. 1998).

For that reason, Voces no longer takes a position on whether the Sheriffs are state or county officials. And if this Court agrees with the *Abraham* court that Wisconsin sheriffs are county officials, as the Sheriffs claim, Br. at 31, this Court need not address the *Pennhurst* question. But in case this Court continues to follow *Soderbeck*'s holding that Wisconsin sheriffs are state officials, Voces addresses the *Pennhurst* argument below.

If this case remains in federal court and returns to the District Court on § 1441 or § 1442 removal grounds, and, if this Court or the District Court were to rule that the Sheriffs are in fact state officials, then the Sheriffs are likely to change positions and claim to have Eleventh Amendment immunity.[9] In that event, if the District Court finds they are entitled to such immunity, *Wisconsin Department of Corrections v. Schacht* will compel the District Court to remand the

[9] Voces believes the Sheriffs have waived any Eleventh Amendment immunity by removing to federal court. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 620 (2002) (holding that state's removal to federal court is a waiver of immunity). The following discussion assumes the District Court finds that the Sheriffs did not waive their Eleventh Amendment immunity.

barred claim to state court. *See* 524 U.S. 381, 389–90 (1998) (addressing whether a state defendant's assertion of Eleventh Amendment immunity after removal destroys removal jurisdiction only as to the specific claim from which the state claims immunity or as to the entire case).

In that case, a former state prison guard sued the state Department of Corrections and various guards in their personal capacities in state court, alleging violations of the federal constitution and civil rights laws. *Id.* at 383–84. The state removed to federal court and asserted Eleventh Amendment immunity as to the claims against the state. *Id.* at 384. The district court dismissed the claims barred by sovereign immunity and granted summary judgment on the personal-capacity claims. *Id.* On appeal, the Seventh Circuit raised *sua sponte* whether the case was properly in federal court in the first place—specifically, whether the presence of one claim that was barred by sovereign immunity meant that the entire case, and not just that one claim, had to be remanded to state court. *Id.* at 385.

Though the Seventh Circuit said it did, the Supreme Court disagreed. It held that a defendant in a case filed in state court, with both proper federal claims and claims barred by the Eleventh Amendment,

can remove the case to federal court and "the court can decide the nonbarred claims." *Id.* at 383, 386, 392.

The premise of *Wisconsin Department of Corrections* is that a federal court must remand claims barred by Eleventh Amendment immunity. Indeed, if the federal court had been allowed to retain the claims barred by the Eleventh Amendment, there would have been no issue for the Supreme Court to resolve. The Court's language makes this premise clear: "A State's proper assertion of an Eleventh Amendment bar after removal means that the federal court cannot hear the barred claim. But that circumstance *does not destroy removal jurisdiction over the remaining claims*." *Id.* at 392 (emphasis added). In other words, that circumstance *does* destroy removal jurisdiction over the barred claims. So when a state claims Eleventh Amendment immunity against certain claims in a removed case, there is no removal jurisdiction as to those claims, and the federal court must remand them to the state court.

In sum, this Court only needs to reach this Eleventh Amendment immunity issue if it first finds that 1) the Sheriffs timely removed, 2) they can remove under either § 1441 or 1442, and 3) they are state officials and therefore entitled to Eleventh Amendment immunity. If this Court

reaches all those issues, it should find that there is no removal jurisdiction under *Wisconsin Department of Corrections*.

## CONCLUSION

For the reasons described above, the District Court's decision granting the motion to remand should be affirmed. If, however, this Court reverses the District Court's decision on timeliness grounds, this Court should remand to the District Court for initial consideration of the other issues.

Dated: September 4, 2026

Respectfully submitted,

/s/ *Hannah R. Schwarz*

Hannah R. Schwarz
Ryan V. Cox
ACLU OF WISCONSIN FOUNDATION
207 E Buffalo St.
Suite 325
Milwaukee, WI 53202
Tel.: 414-272-4032
Fax: 414-272-0182
hschwarz@aclu-wi.org
rcox@aclu-wi.org

R. Timothy Muth
2010 N. Fratney St.
Milwaukee, WI 53212
Tel.: 414-588-5151
tim.muth@wi-immigration.com

*Counsel for Petitioner-Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) and Seventh Circuit R. 32(c) because it contains 11,554 words, excluding the items listed in Fed. R. App. P. 32(f). This brief further complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit R. 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ *Hannah R. Schwarz*
Hannah R. Schwarz
September 4, 2026
*Counsel for Petitioner-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2026, I electronically filed the foregoing Certificate with the Clerk for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ *Hannah R. Schwarz*
Hannah R. Schwarz
September 4, 2026
*Counsel for Petitioner-Appellee*